Joane M. CHRISTIANSON,
Respondent,

v.

Travis HENKE, Respondent,

Claire Holewa, Appellant.

No. A11–1319.

Supreme Court of Minnesota.

May 31, 2013.

Virginia A. Marso, Marso Law Office, Waite Park, MN, for respondent Joane M. Christianson.

Travis Henke, Foreston, MN, pro se.

Robert A. Manson, Robert A. Manson, P.A., White Bear Lake, MN, for appellant.

## OPINION

ANDERSON, PAUL H., Justice.

The Benton County District Court awarded grandparent visitation to Joane Christianson, the paternal grandmother of T.H., which decision was affirmed by the Minnesota Court of Appeals. T.H.'s mother, Claire Holewa, appeals the court of appeals decision to affirm the award of visitation to Christianson. Minnesota Statutes § 257C.08 (2012), the grandparent visitation statute, allows a court to award visitation as part of several different kinds of proceedings, including a "proceeding" for parentage. The district court concluded that the Recognition of Parentage executed by T.H.'s parents pursuant to Minn.Stat. § 257.75 (2012) was a proceeding for parentage under the grandparent visitation statute. Holewa asserts that there has been no proceeding under the statute and therefore the district court lacked subject matter jurisdiction to award visitation to T.H.'s grandmother. Because we conclude that a Recognition of Parentage executed and filed with the appropriate state agency under Minn.Stat. § 257.75 is a "proceeding" for purposes of Minn. Stat. § 257C.08, subd. 2, we conclude that a "proceeding" occurred and that the district court had subject matter jurisdiction to award visitation to Christianson. Therefore, we affirm.

On August 2, 2007, Claire Holewa gave birth to a son, T.H. That same day, Holewa and Travis Henke executed, and subsequently filed with the appropriate state agency, a Recognition of Parentage (ROP), which stated that Henke was T.H.'s father. *See* Minn.Stat. § 257.75 (creating ROP form and procedure). For most of the first two years of T.H.'s life, Joane Christianson, T.H.'s paternal grandmother, and Craig Christianson, T.H.'s paternal stepgrandfather, played a major role in supporting T.H. and his parents. This support included helping Holewa and Henke purchase a trailer home that was located near the Christiansons' own home and frequently caring for T.H.

After Holewa and Henke separated, Benton County brought a child support action against Henke. Following the separation, the Christiansons continued to provide childcare for T.H. They did so at Henke's request. The Christiansons usually cared for T.H. on afternoons and eve-

nings on Mondays and Wednesdays, and overnights on Friday.

On November 13, 2010, an incident occurred that adversely affected the relationship between T.H.'s parents and the Christiansons. On that day, Henke sent a text message to the Christiansons indicating that Holewa was· threatening to commit suicide. Holewa had attempted suicide before T.H. was born, a fact that was known to the Christiansons. Holewa's suicide attempt had left her hospitalized for two days. On November 13, following Holewa's new threat of suicide, Henke brought T.H. to the Christiansons' home. At some point thereafter, Holewa arrived at the Christiansons' home so that she could retrieve T.H., but the Christiansons refused to release T.H. to her. The police were called and after they arrived, the Christiansons fully complied with the police's instruction that the Christiansons return T.H. to Holewa. This incident caused Holewa and Henke to state that the Christiansons "would never see [T.H.] again."

Following the November 13, 2010 incident, the Christiansons filed a petition for grandparent visitation with T.H. The Christiansons requested visitation of four hours twice per week plus one overnight stay every weekend, time around each major holiday, and a minimum of three nonconsecutive weeks during the summer. Holewa answered the Christiansons' petition and indicated that she disagreed with the amount of visitation the Christiansons sought with T.H. The Christiansons subsequently reduced their request for visitation to "reasonable grandparent visitation." Holewa then amended her answer to the Christiansons' petition and moved the district court to dismiss Craig Christianson as a party to the proceedings and to award Joane Christianson some visitation with T.H., provided Craig Christianson was not present. By the time the district court

held a hearing on the parties' motions, Craig Christianson had withdrawn as a party to the visitation proceedings and the remaining parties—Holewa, Henke, and Joane Christianson—agreed that Joane Christianson should have at least some visitation. But the parties disagreed over how much visitation was warranted and whether Craig Christianson should be allowed to be present during the visitation.

On March 8, 2011, the district court issued an order ruling on the parties' motions. The court conducted an amount-of-contact, a best-interests-of-the-child, and an interference-with-parent/child-relationship analysis. The court then found that Joane Christianson "has had significant contact with" T.H. throughout his life and that she "cared for [T.H.] frequently." The court found, and the parties agreed, that it was in T.H.'s best interests for T.H. to have some contact with Joane Christianson. Further, the court could not find any reason beyond the November 13, 2010 incident to mandate that Craig Christianson have no contact with T.H. The court concluded that the November 13 incident alone was "unreasonable" grounds for excluding Craig Christianson from being present during the visitation between T.H. and Joane Christianson. But the court found that the amount of time Joane Christianson had requested for visitation would interfere with the parent/child relationship and therefore granted visitation limited to 4:00–8:00 p.m. on Wednesday evenings and an overnight stay on every third Friday of each month.

Holewa responded by moving to vacate the district court's order, further amend her amended answer, and amending the district court's order. Holewa alleged that she had received faulty legal advice from her attorney and that the district court lacked subject matter jurisdiction to award Joane Christianson visitation under the

grandparent visitation statute, Minn.Stat. § 257C.08. Section 257C.08, subdivision 2, only allows a court to award grandparent visitation following the "commencement" of a variety of proceedings, including a proceeding for parentage. Holewa claimed that the ROP she and Henke had executed is not such a proceeding, and thus, the court lacked subject matter jurisdiction to award visitation to Joane Christianson.

The district court disagreed with Holewa's claims, concluding that an ROP is unambiguously a "proceeding" under section 257C.08, subdivision 2, and that legislative intent also dictates that an ROP is a proceeding. But the court did amend its visitation order, superseding the original schedule by specifying several holidays that T.H. would spend with his mother.[1] The court then denied Holewa's other motions.

Holewa appealed the district court's orders on the subject matter jurisdiction issue to the court of appeals. *Christianson v. Henke*, 812 N.W.2d 190, 191 (Minn.App. 2012). The court of appeals affirmed the district court, holding that "under the plain language of the applicable statutes, a ROP is a 'proceeding' for 'parentage' ·for purposes of asserting a claim for grandparent visitation." *Id.* at 194. Holewa subsequently appealed to our court and we granted review.

▮ The parties do not dispute any relevant facts in this case. The only disputed issue before us is a question of statutory interpretation, which we review de novo. *Varda v. Nw. Airlines Corp.*, 692 N.W.2d 440, 444 (Minn.2005). When there are no disputed facts, the application of the law to the undisputed facts is a question of law and "fully reviewable" by appellate courts. *Metro. Sports Facilities Comm'n v. Cnty. of Hennepin*, 561 N.W.2d 513, 515 (Minn.1997).

Holewa asserts that an ROP cannot count as a proceeding under section 257C.08, subdivision 2, and makes several arguments to support her assertion. First, while the district court found that section 257.75, subdivision 3, states that an ROP "has the force and effect of a judgment," Holewa argues that the court skipped over parts of the statute that do not support the court's holding. To support her claim, Holewa cites the fact that, under certain conditions, an ROP can be challenged.[2] Holewa also cites a definition of "proceeding" from *Black's Law Dictionary*, which in part defines a "proceeding" as a component of actual litigation. Holewa next argues that the ROP statute specifically lists the actions that can be brought using an ROP,· and she asserts that this list should be interpreted as exclusive under the "*expression unius est exclusio alterius*" canon of statutory construction.[3]

---

1. The holidays included Christmas Eve, Christmas Day, New Year's Day, July 4, Halloween, Holewa's birthday, and T.H.'s birthday.

2. These conditions include if there are competing ROP forms signed by two different putative fathers, Minn.Stat. §§ 257.75, subd. 3, 257.55, subd. 1(g) (2012), or if a signed revocation of an ROP is submitted within 60 days of the original ROP, Minn.Stat. § 257.75, subd. 2. None of these conditions are present here and the ROP is not disputed.

3. United States Supreme Court Justice Antonin Scalia and Bryan A. Garner, author, editor, and editor-in-chief of *Black's Law Dictionary*, described this canon as follows:

   *Expressio unius* ... is a Latin name for the communicative device known as negative implication. In English, it is known as the negative-implication canon....

   Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context. Indeed, one commentator sug-

Holewa also notes the fact that the title of the grandparent visitation subdivision in question is "Family court proceedings." Minn.Stat. § 257C.07, subd.2. She argues that, while the titles of statutes are not typically relevant, the titles *can* be relevant for interpreting legislative intent when the titles were present during the legislative process that created the statute. *See Minn. Express, Inc. v. Travelers Ins. Co.*, 333 N.W.2d 871, 873 (Minn.1983). To support this argument, Holewa reviews several earlier versions of the grandparent visitation statute in order to show that the term "family court proceedings" has been present during multiple iterations of the statute. Holewa notes that the grandparent visitation statute initially allowed a district court to award visitation only during proceedings for the dissolution of marriage between the child's parents, and was only subsequently expanded to include proceedings for parentage. Holewa argues that one common element between dissolution of marriage and parentage proceedings in family court is that, for both of those proceedings, the court is required to address issues of custody and visitation in its final order.

Christianson counters with the assertion that treating an ROP as a "proceeding" under the grandparent visitation statute vindicates the clear intent of the Legislature. Christianson argues that the title of the statute should not be considered as part of our analysis because the statute's purpose is dispositive—in this case, the purpose being providing visitation rights for grandparents. Christianson also argues that Holewa's review of the various versions of the grandparent visitation stat-

ute is "enlightening," but that this review shows that the Legislature did not intend "proceedings" under the statute to be limited only to court proceedings. Christianson asserts the fact the Legislature could have qualified the term "proceeding" with "court proceedings," but chose not to.

Christianson next argues against Holewa's suggestion that the ROP statute's list of actions wherein an ROP can be used should be read as an exclusive list. Christianson notes that the ROP statute includes a catchall provision, which states that the ROP should be "determinative for all other purposes related to the existence of the parent and child relationship." Minn.Stat. § 257.75, subd. 3(2). Christianson also argues that an ROP is a proceeding because there is a detailed process for executing and filing an ROP within the ROP statute and thus an ROP can have a "commencement" as mentioned in the grandparent visitation statute. *See id.,* subd. 5 (describing ROP form).

▮▮▮▮ We have stated that the "goal of all statutory interpretation is to 'ascertain and effectuate the intention of the legislature.'" *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn.2012)(quoting Minn.Stat. § 645.16 (2012)). The first step in statutory interpretation is to "'determine whether statute's language, on its face, is ambiguous.'" *Larson v. State*, 790 N.W.2d 700, 703 (Minn.2010)(quoting *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001)). In determining whether a statute is ambiguous, we will "'construe the statute's words and phrases according to their plain and ordinary meaning.'" *In*

gests that it is not a proper canon at all but merely a description of the result gleaned from context. That goes too far....

The doctrine properly applies only when the ... *unum,* the thing specified[] can reasonably be thought to be an expression

of *all* that shares in the grant or prohibition involved. *Common sense* often suggests when this is or is not so.

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012)(emphasis added)(footnotes omitted).

*re the Fin. Responsibility for the Out–of– Home Placement Costs for S.M.,* 812 N.W.2d 826, 829 (Minn.2012), *quoted in Martin v. Dicklich,* 823 N.W.2d 336, 342 (Minn.2012). A statute is only ambiguous if its language is subject to more than one reasonable interpretation. *Id.* Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous. *Dicklich,* 823 N.W.2d at 344. When we conclude that a statute is unambiguous, our "role is to enforce the language of the statute and not explore the spirit or purpose of the law." *Caldas,* 820 N.W.2d at 836. Alternatively, if we conclude that the language in a statute is ambiguous, then "we may consider the factors set forth" by the Legislature for interpreting a statute. *State v. Peck,* 773 N.W.2d 768, 772 (Minn.2009); *see also* Minn.Stat. § 645.16(1)–(8) (setting out factors for statutory interpretation).

Using the foregoing rules for interpreting a statute, the first step of our analysis is to ascertain whether the meaning of "proceeding" in Minn.Stat. § 257C.08, subd. 2, is ambiguous as to an ROP executed by a child's mother and father and filed with the "state registrar of vital statistics" under Minn.Stat. § 257.75. If the meaning of "proceeding" within Minn.Stat. § 257C.08 is plain, then our inquiry ends. But, if the meaning is ambiguous, and thus not determinative, we must consider the statute's language in the context of the legislative intent of the statute and the factors set forth under Minn.Stat. § 645.16.[4]

The grandparent visitation statute reads in pertinent part:

> In all proceedings for dissolution, custody, legal separation, annulment, or parentage, after the commencement of the proceeding, or at any time after completion of the proceedings, and continuing during the minority of the child, the court may, upon the request of the parent or grandparent of a party, grant reasonable visitation rights to the unmarried minor child. . . .

Minn.Stat. § 257C.08, subd. 2. Thus, the statute identifies five types of "proceedings" that provide a district court with sufficient subject matter jurisdiction to award visitation to a child's grandparents: dissolution, custody, legal separation, annulment, or parentage. The core question presented here is whether an ROP is considered to be such a proceeding. Subdivision 3 of the ROP statute states "the [ROP] has the force and effect of a judgment or order determining the existence of the parent and child relationship under section 257.66," Minn.Stat. § 257.75, subd. 3, and subdivision 3(2) provides that an ROP is "determinative for all . . . purposes related to the existence of the parent and child relationship," *id.* subd. 3(2). The ROP form described in the statute is prepared by the Minnesota Commissioner of Human Services. *Id.,* subd. 5. To take effect, an ROP must be filled out, notarized, and then filed with the "state registrar of vital statistics." *Id.* subds. 1, 5.

Both *Black's Law Dictionary* and *Merriam–Webster's Collegiate Dictionary* offer definitions of "proceeding" that support

---

**4.** Those factors are:
   (1) the occasion and necessity for the law;
   (2) the circumstances under which it was enacted;
   (3) the mischief to be remedied;
   (4) the object to be attained;
   (5) the former law, if any, including other laws upon the same or similar subjects;

   (6) the consequences of a particular interpretation;
   (7) the contemporaneous legislative history; and
   (8) legislative and administrative interpretations of the statute.
 Minn.Stat. § 645.16(1)–(8).

including an ROP as a proceeding. *Black's* provides three definitions of a proceeding: (1) "Any procedural means for seeking redress from a tribunal or agency"; (2) "An act or step that is part of a larger action"; and (3) "The business conducted by a court or other official body." *Black's Law Dictionary* 1324 (9th ed.2009). "Proceeding" has also been defined as a "legal action (a divorce)," or "an official record of things said or done." *Merriam–Webster's Collegiate Dictionary* 927 (10th ed.2001).

We have not adopted a specific definition for "proceeding." *See State v. Hohenwald,* 815 N.W.2d 823, 830 (Minn.2012)(articulating one definition of "proceeding"); *Latourell v. Dempsey,* 518 N.W.2d 564, 565–66 (Minn.1994) (weighing different factors to determine whether custody and visitation determinations under the Parentage Act constitute a proceeding). But we have considered the force and weight of an ROP on several occasions. *See Beardsley v. Garcia,* 753 N.W.2d 735, 740 (Minn.2008) (awarding parenting time during an OFP proceeding based on an ROP); *In re Child of B.J.–M. and H.W.,* 744 N.W.2d 669, 673–74 (Minn.2008)(holding that a parent who had executed an ROP could not have his parental rights terminated in the absence of a petition naming the parent as a party to the proceedings). In *Beardsley v. Garcia,* we held that an ROP provided a sufficient basis for the district court to have subject matter jurisdiction to award parenting time to a father who was subject to an OFP proceeding brought by the child's mother. 753 N.W.2d at 737–38. It is significant that in *Beardsley* we attributed great weight to an ROP when considering whether the district court had subject matter jurisdiction for granting visitation. We have held that "when we have interpreted a statute, that interpretation guides us in reviewing

subsequent disputes over the meaning of the statute." *Caldas,* 820 N.W.2d at 836.

Given both the plain meaning of the relevant statutes and our prior case law wherein we stated that ROPs carried great weight, we conclude that an ROP is a "proceeding" for purposes of Minn.Stat. § 257C.08, subd. 2. There are several considerations that lend considerable support for this conclusion. An examination of the plain language definitions of "proceeding" shows that an official document such as an ROP is included within the plain meaning of the word. Here, it is important to note that the Legislature has used forceful language about the significance of an ROP, including the statement that an ROP should be "determinative for all other purposes related to the existence of the parent and child relationship," Minn.Stat. § 257.75, subd. 3(2), and that the ROP is to have the same "force and effect" as a judgment, *id.,* subd. 3.

We have frequently stated that a statute should be interpreted so as to give effect to all of its provisions. *See, e.g., Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). We have further stated that "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). Combined, these considerations convince us that an ROP is unambiguously a proceeding for purposes of the grandparent visitation statute, Minn.Stat. § 257C.08. Concluding that the statute is unambiguous is determinative for the present question. Nevertheless, because our conclusion receives further support from the Legislature's intent in enacting the grandparent visitation statute, we turn briefly to legislative intent.

We have held that if the language in a statute has more than one reasonable interpretation then the statute is ambiguous.

*Dicklich,* 823 N.W.2d at 342. As previously stated, we will then look beyond the plain language of the statute to ascertain the intent of the Legislature and we may consider the factors laid out in section 645.16(1)–(8) when doing so. *Rohmiller v. Hart,* 811 N.W.2d 585, 589 (Minn.2012); *Peck,* 773 N.W.2d at 772. While we conclude that the word "proceeding" as used in Minn.Stat. § 257C.08 unambiguously includes an ROP and thus we need not consider the Legislature's purpose behind the statute, even a cursory examination of the legislative history supports including an ROP within the meaning of "proceeding." Our earlier case law has considered the issue of the legislative history of the ROP statute and is helpful background for the present case.

We have examined the grandparent visitation statute at least twice to determine the statute's purpose and the Legislature's intent in enacting it. *See Rohmiller,* 811 N.W.2d at 591–92; *Olson v. Olson,* 534 N.W.2d 547, 549 (Minn.1995). We have recognized that, "[h]istorically, grandparents had virtually no legal right to maintain a relationship with a grandchild independent of the wishes of the child's parents." *Olson,* 534 N.W.2d at 549. The Legislature "responded to the issue" by adopting a statute to provide grandparents some visitation rights. *Id.* This grant was originally limited to only cases of divorce between a child's parents, but the Legislature has amended the statute several times—and over time has expanded grandparents' visitation rights. *See id.* We have previously held that "the legislative purpose in enacting Minn. Stat. § 257C.08" was to provide grandparents "a legal right to maintain a relationship" with their grandchildren "independent of the wishes of the child's parents." *Rohmiller,* 811 N.W.2d at 591–92 (citation omitted) (internal quotation marks omitted).

While our conclusion in *Rohmiller* as to the legislative purpose of Minn.Stat. § 257C.08 does not speak directly to the meaning of "proceeding," our conclusion weighs significantly in favor of an inclusive reading of that word in the context of this case so that the Legislature's purpose is given effect. Three of the legislatively outlined factors of statutory interpretation buttress an inclusive reading of "proceeding" as used in section 257C.08. These factors include: "the occasion and necessity for the law," meaning providing legal rights to grandparents; "the mischief to be remedied," meaning the lack of visitation rights for grandparents under the common law; and "the object to be attained," meaning providing grandparents with a legal remedy to seek visitation. *See* Minn.Stat. § 645.16(1), (3), (4).

We conclude that the legislative intent of the grandparent visitation statute, Minn. Stat. § 257C.08, supports the inclusion of an ROP within the meaning of "proceeding." We reach this conclusion based on the unambiguous meaning of the relevant statutes. Our interpretation is further supported by the legislative purpose of section 257C.08 that we have identified in this opinion and our prior case law, together with how that legislative purpose is interpreted in conjunction with an ROP as defined in Minn.Stat. § 257.75—including the fact that under section 257.75, subdivision 3, an ROP has the full "force and effect" of a judgment establishing parentage.

For the foregoing reasons, we conclude that an ROP is a "proceeding" for purposes of Minn.Stat. § 257C.08, and we therefore hold that the district court had subject matter jurisdiction to award visitation to Joane Christianson.

Affirmed.

STRAS, Justice (dissenting).

The question presented by this case is whether execution of a recognition of par-

entage (ROP) constitutes a "proceeding[ ] for ... parentage" under Minnesota's grandparent visitation statute, Minn.Stat. § 257C.08, subd. 2 (2012). If the answer to that question is "yes," as the court concludes, then the district court had the statutory authority to award visitation rights to Joane Christianson, T.H.'s paternal grandmother. On the other hand, if an ROP lacks the attributes of a "proceeding," then the district court lacked the authority to award visitation rights to Christianson. In my view, an ROP does not qualify as a "proceeding" because, even under the definitions relied upon by the court, an ROP lacks the attributes common to each of the "proceedings" listed in the statute: the requirement of an underlying legal action and involvement of a court. Because an ROP *avoids* the necessity for a legal action and court involvement to establish parentage, I respectfully dissent.

## I.

The legal issue in this case turns upon the interpretation of Minn.Stat. § 257C.08, subd. 2, which lists the proceedings that can give rise to a request for grandparent visitation:

> In all proceedings for dissolution, custody, legal separation, annulment, or parentage, after the commencement of the proceeding, or at any time after completion of the proceedings, and continuing during the minority of the child, the court may, upon the request of the parent or grandparent of a party, grant reasonable visitation rights to the unmarried minor child, after dissolution of marriage, legal separation, annulment, or determination of parentage during minority....

Neither party disputes that the ROP signed by Claire Holewa and Travis Henke established their parentage of T.H., the minor child over whom Christianson seeks visitation rights. Rather, the question at issue in this case is whether the ROP signed following T.H.'s birth constitutes a "proceeding" under the plain language of Minn.Stat. § 257C.08, subd. 2.

The grandparent visitation statute does not define the term "proceedings." In the absence of a statutory definition, we give statutory terms their plain and ordinary meaning. *See State v. Leathers,* 799 N.W.2d 606, 609 (Minn.2011). As the court notes, we have defined the term "proceedings" before, as recently as last year in *State v. Hohenwald,* 815 N.W.2d 823 (Minn.2012). In determining the plain and ordinary meaning of the term "proceedings" for purposes of Minn. R.Crim. P. 20.01—the provision governing the legal standards for ordering a mental competency hearing for a defendant in a criminal case—we held that the term refers to "the multiple, progressive hearings within a 'particular action at law or case in litigation.'" *Hohenwald,* 815 N.W.2d at 830 (quoting *Webster's Third New International Dictionary of the English Language Unabridged* 1807 (2002)). In discussing the varying interpretations of the term advanced by the parties in that case, we rejected Hohenwald's definition because it failed to account for the fact that "proceedings" refers to the business or "work done by courts." *Id.* at 830 n. 2. We reached a similar conclusion in *Latourell v. Dempsey*—the other case cited by the court—in which we determined that custody and visitation actions *brought in court* qualified as "proceedings" under the Parentage Act. 518 N.W.2d 564, 565–66 (Minn.1994). Never have we suggested that a "proceeding" is anything other than an action at law or a case in litigation.[1]

---

1. Indeed, the court's broad interpretation of    the term "proceedings" means that parents

In concluding otherwise, the court relies on other definitions of the term "proceedings"—some of which we rejected in *Hohenwald*—but even those definitions ascribe a narrow meaning to the term. The court lists three definitions from *Black's Law Dictionary:* (1) "Any procedural means for seeking redress from a tribunal or agency"; (2) "[a]n act or step that is part of a larger action"; and (3) "the business conducted by a court or other official body; a hearing." *Black's Law Dictionary* 1324 (9th ed.2009). None of those three definitions, however, supports the court's interpretation of Minn.Stat. § 257C.08, subd. 2. For instance, the court seems to imply that an ROP is a means of seeking redress from an agency. While the Minnesota Department of Health files an ROP after the parents submit it, the agency does not grant the parties anything, much less redress or a remedy. *See Black's Law Dictionary* 1392 (9th ed.2009)(defining "redress" as "[r]elief; remedy"). An ROP also is not a step in a larger action. Instead, it is the *only* step for parents in establishing parentage outside of court. Nor does the execution of an ROP involve business conducted by a court or other official body. In sum, the definitions of the term "proceeding" discussed by the court contradict, rather than support, the court's interpretation that an ROP constitutes a "proceeding" under Minn.Stat. § 257C.08, subd. 2.[2]

## II.

Application of the textual, "common-sense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated," supports my interpretation that an ROP is not a "proceeding" under Minn.Stat. § 257C.08, subd. 2. *United States v. Williams*, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008); *see also State v. Suess*, 236 Minn. 174, 182, 52 N.W.2d 409, 415 (1952) ("[T]he meaning of doubtful words in a legislative act may be determined by reference to their association with other associated words and phrases."). The purpose of the *noscitur a sociis* canon—a Latin phrase meaning it is known by its associates—is to "avoid ascribing to one word a meaning

---

who execute an ROP arguably are entitled to appointed counsel if they are "financially unable to obtain counsel." Minn.Stat. § 257.69, subd. 1 (2012). As we held in *Latourell*, the question of whether indigent parties receive counsel in determining parentage under the Parentage Act turns on whether the underlying dispute constitutes a "proceeding." 518 N.W.2d at 565–66. While such a broad right to counsel would appear contrary to the Legislature's intent in limiting the right to counsel to the statutory actions listed in Minn.Stat. §§ 257.51–.74 (2012), the court premises its determination that an ROP is a "proceeding" on its conclusive effect under Minn.Stat. § 257.66—a provision that unquestionably is covered by the appointment-of-counsel statute.

**2.** The court also relies on two additional definitions without explaining how those definitions support its interpretation of the statute. The first definition—"a legal action (a divorce)"—flatly contradicts the court's broad interpretation of the statute because an ROP does not involve a "legal action." *Merriam–Webster's Collegiate Dictionary* 927 (10th ed.2001). The second definition—"an official record of things said or done"—arguably supports the court's interpretation until the definition is viewed in the context of the remainder of Minn.Stat. § 257C.08, subd. 2. *Id.* The court fails to explain how the second definition applies to the other "proceedings" listed in the statute—those involving dissolution, custody, legal separation, and annulment—all of which are legal actions that fall within the first definition. *See infra* at D–6 to D–8. Moreover, only the first definition from *Merriam–Webster's Collegiate Dictionary* is synonymous with how we have defined the term "proceedings" in the past. *See Hohenwald*, 815 N.W.2d at 829–30; *Latourell*, 518 N.W.2d at 565–66.

so broad that it is inconsistent with its accompanying words." *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

Application of the *noscitur a sociis* canon reveals two aspects of Minn.Stat. § 257C.08, subd. 2, that cast doubt on the court's interpretation of the statute. First, the statute indicates that the "proceeding" described in the statute must be capable of "commencement" and "completion" because those two events trigger a grandparent's right to request visitation. By specifying two triggering events that bookend the "proceeding" itself, the text implies that the "proceeding" described in the statute must be of sufficient duration that a grandparent has an opportunity to file a request for visitation *during* the "proceeding." Otherwise, a "proceeding" that is too short would not permit a grandparent to file a request for visitation "after the commencement of the proceeding," which effectively would eliminate one of the triggering events. Minn.Stat. § 257C.08, subd. 2. Put differently, the triggering events that give rise to a grandparent's request for visitation—"commencement" and "completion"—provide context for the meaning of the general terms "proceeding" and "proceedings" in Minn.Stat. § 257C.08, subd. 2.

It is odd to describe an ROP as capable of "commencement" and "completion" because an ROP is a two-page form drafted by the Commissioner of Human Services. *Infra* at Appendix. Because the time to complete an ROP is so short—just a few minutes—it is highly unlikely that a grandparent will have time to file a request for visitation with a court "after the commencement of the proceeding." Minn. Stat. § 257C.08, subd. 2. The form requires only that the mother and father list basic biographical information about themselves and the child, including their names, birthdates, and birthplaces. *Infra* at Appendix. An ROP is similar in scope and length to a credit card application or a form to acquire a driver's license in Minnesota. An ROP makes clear that parents can complete the form shortly after childbirth at the hospital, so long as a notary public witnesses the signatures of the two parents and affixes his or her stamp and signature to the form. An ROP is intended to—and indeed fulfills the purpose of—providing an inexpensive and informal way to establish the legal parentage of a child *without* the costs and hassles associated with legal proceedings. Therefore, one of the characteristics of a "proceeding"—that it be of sufficient duration that a grandparent has time to file a request for visitation with a court—is absent with an ROP.

Second, the specific types of proceedings listed in Minn.Stat. § 257C.08, subd. 2, clarify the scope of the general terms "proceeding" and "proceedings" in the statute. Under the canon of *noscitur a sociis,* the fact "[t]hat several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well." *Beecham v. United States,* 511 U.S. 368, 371, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994). The statute lists the specific types of "proceedings" that give rise to the statutory right of grandparents to request visitation with a minor child: those involving "dissolution, custody, legal separation, annulment, or parentage." Minn.Stat. § 257C.08, subd. 2.

Actions for dissolution, annulment, and legal separation require the filing of an underlying legal action and the involvement of a court. *See* Minn.Stat. § 518.06, subd. 1 (2012) (dissolution and legal separation); Minn.Stat. § 518.03 (2012) (annulment). Each is commenced by service of a petition, includes an opportunity for the respondent to answer, and generally involves a hearing and findings made by a

court. Minn.Stat. §§ 518.09–.13 (2012). Although a court may grant a dissolution, legal separation, or annulment without a hearing in limited circumstances, the court must still approve the proposed findings of fact, conclusions of law, and order for judgment in order for the dissolution, legal separation, or annulment to be legally enforceable. Minn.Stat. §§ 518.03, 518.13, subd. 5.

A custody determination also requires the filing of a legal action and the involvement of a court. A parent commences a custody proceeding by filing "a petition for dissolution or legal separation" or "a petition or motion seeking custody or parenting time." Minn.Stat. § 518.156, subd. 1 (2012). The person commencing the proceeding must give notice to "the child's parent, guardian, and custodian, who may appear and be heard and may file a responsive pleading." *Id.*, subd. 2 (2012). Custody proceedings involve a hearing, after which the court "determine[s] questions of law and fact," Minn.Stat. § 518.168(c) (2012), and issues a custody order, Minn.Stat. § 518.17, subd. 3 (2012).

In contrast to "proceedings" for dissolution, custody, legal separation, and annulment, an ROP does not involve the filing of a legal action or the involvement of a court. An ROP does not require a court's approval, findings of fact, conclusions of law, or an order or decree. In fact, the *purpose* of an ROP is to avoid legal action before a court. *See* Minn.Stat. § 257.75, subd. 3 (2012) ("Once [an ROP] has been properly executed and filed ..., if there are no competing presumptions of paternity, a judicial or administrative court may not allow further action to determine par-

entage regarding the signator of the recognition.").

Putative parents can also establish their parentage through a legal action brought in district court. Minn.Stat. §§ 257.57, 257.59 (2012); *see also* Minn.Stat. § 257.71 (2012) (providing that an action to determine the mother-and-child relationship follows, to the extent practicable, the same provisions that govern an action to determine the father-and-child relationship). Such an action "is a civil action governed by the Rules of Civil Procedure," Minn. Stat. § 257.65 (2012), and includes the presentation of testimony, blood and genetic tests, and other evidence, Minn.Stat. §§ 257.62, 257.63 (2012). An action for parentage concludes with a judgment or order of the court determining the existence or nonexistence of parentage. Minn. Stat. § 257.66 (2012).

Under the canon of *noscitur a sociis*, only a court action to establish parentage qualifies as a "proceeding[ ] for ... parentage" under Minn.Stat. § 257C.08, subd. 2. Only that type of action, not an ROP, shares the attributes common to all of the other "proceedings" listed in the statute: an underlying legal action and court involvement.

### III.

In construing the statute to reach the opposite conclusion, the court relies on three considerations that are independent of the statutory text. First, although the court concludes that the statute is unambiguous, it nonetheless discusses the legislative history and purpose of the statute. Specifically, the court points to the "occasion and necessity for the law," "the mischief to be remedied," and the "object to be attained."[3] Because neither the court

---

**3.** I would not resort to the canons of construction to interpret Minn.Stat. § 257C.08, subd. 2 because the statutory language is unambiguous. Nevertheless, I will make an observation regarding the bizarre implications of the court's interpretation of the statute. Aside from possibly creating a right to counsel for indigent parties executing an ROP, *see*

nor I conclude that the statute is ambiguous, resort to the canons of construction listed in Minn.Stat. § 645.16 (2012) is both unnecessary and contrary to our case law. *See State v. Bluhm,* 676 N.W.2d 649, 651 (Minn.2004) ("[W]hen the legislature's intent is clear from plain and unambiguous statutory language, this court does not engage in any further construction and instead looks to the plain meaning of the statutory language." (citation omitted) (internal quotation marks omitted)).

Second, the court posits that, because an ROP has the same "force and effect" as a judgment, it must constitute a "proceeding." The court's analysis is exactly backwards. Instead of determining whether an ROP is a "proceeding" in the first instance, the court's analysis bootstraps by concluding that, because a court action or judgment is a "proceeding," then anything with the same force and effect logically must be a "proceeding" too. The court's analysis also begs the question. The *effect* of an action does not necessarily say anything about its *character*. For example, a guilty plea has the same force and effect as a jury trial, but no one would argue that a guilty plea and a jury trial are the same thing. In fact, a primary purpose of a guilty plea, like an ROP, is to *avoid* a trial. The court therefore relies on a logical fallacy in concluding that an ROP must be a

"proceeding" because it has the same "force and effect" as a judgment.

Third, the court compounds its error by relying on case law that purportedly demonstrates the "great weight" we have attributed to the *effect* of an ROP. For example, the question presented in *Beardsley v. Garcia* was whether the district court had the statutory authority to grant parenting time to the father—whose parentage had been acknowledged through an ROP—during a subsequent order for protection proceeding. 753 N.W.2d 735, 737–38 (Minn. 2008). Thus, the issue in *Beardsley* had everything to do with the effect of an ROP and nothing to do with the character of an ROP, let alone its relationship to the grandparent visitation statute. Similarly, the other two cases relied upon by the court both involved the legal effect of a previously executed ROP in a separate proceeding. *See In re D.T.R.,* 796 N.W.2d 509 (Minn.2011); *In re Child of B.J.–M. & H.W.,* 744 N.W.2d 669 (Minn.2008). Neither case addressed the question presented here. In sum, the court is simply wrong in its interpretation of the grandparent visitation statute.

IV.

For the foregoing reasons, I would reverse the decision of the court of appeals.

APPENDIX

*supra* at D–3 note 1, the court's interpretation of the statute discriminates against unmarried couples. Only unmarried couples need to establish parentage. *See* Minn.Stat. § 257.55 (providing a presumption of paternity for a man who is married to the child's birth mother). Rather than placing unmarried couples on an equal footing with married couples, the court today concludes that unmarried couples

must necessarily open themselves up to potential challenges by grandparents for visitation rights no matter whether they choose an ROP or another method to establish parentage. The court fails to identify any basis, textual or otherwise, that demonstrates legislative intent to establish a statutory scheme that discriminates against unmarried couples.

# Minnesota Voluntary Recognition of Parentage

| FIRST NAME | MIDDLE NAME | | LAST NAME | SUFFIX (Jr., Sr., I, II, etc.) |
|---|---|---|---|---|

**Child**

| BIRTH DATE (mm/dd/yy) | BIRTH PLACE (city/state) | | | |
|---|---|---|---|---|

| Do you want to change your child's last name? If yes, write the new last name in the box to the right. If no, write the current last name in the box to the right. | | | ☐ Yes ☐ No | CHILD'S LAST NAME |
|---|---|---|---|---|

**Mother**

| FIRST NAME | MIDDLE NAME | | LAST NAME | BIRTH DATE (mm/dd/yy) |
|---|---|---|---|---|
| MAILING ADDRESS | | BIRTH PLACE (city/state/country) | | |
| CITY | | STATE | ZIP CODE | SOCIAL SECURITY NUMBER |

| Were you married to a man other than the biological father when this child was conceived or born? If yes, the husband/ex-husband must also file a Husband's Non-paternity Statement (Form DHS-3159C) within one year of this child's birth to put the name of the biological father on this child's birth record. | ☐ Yes ☐ No |
|---|---|

**Father**

| FIRST NAME | MIDDLE NAME | | LAST NAME | BIRTH DATE (mm/dd/yy) |
|---|---|---|---|---|
| MAILING ADDRESS | | BIRTH PLACE (city/state/country) | | |
| CITY | | STATE | ZIP CODE | SOCIAL SECURITY NUMBER |

I have read the instructions and I understand the "Parent's statement," "Waiver of rights" and "Custody and parenting time information" sections of this form. I have examined this form and, to the best of my knowledge and belief, I declare that it is a true and correct statement of every important point.

Mother's signature x _____

Father's signature x _____

**Notary Public**

In the state of _____ , County of _____
Sworn/affirmed to before me this (mm/dd/yy).

☐☐ / ☐☐ / ☐☐

_____  _____
Notary Public Signature    My commission expires

In the state of _____ , County of _____
Sworn/affirmed to before me this (mm/dd/yy).

☐☐ / ☐☐ / ☐☐

_____  _____
Notary Public Signature    My commission expires

**Agency**

Form completed at:
☐ MCH  ☐ DHS  ☐ County  ☐ Hospital  ☐ Other

Agency name _____

DHS-3159-ENG 8-12

### Parent's statement:

**Under oath, I state that:**

- I have been told about the Recognition of Parentage (ROP) form and understand my rights and responsibilities created and waived by signing this form.

- I have a copy of *Being a Legal Father: Parentage information for mothers and fathers* (DHS-3159A) I read the booklet or had someone else read it to me.

- I have received additional oral notice about my rights, responsibilities and alternatives to signing this form.

- I understand that either of us may choose not to acknowledge paternity. As alternatives to signing the ROP, either of us could ask the court to decide on paternity or we could acknowledge paternity later.

- I acknowledge that we are the biological parents of the child named in this ROP.

- I understand that this ROP does not give custody or parenting time to the legal father. However, this ROP gives the father the right to ask the court for custody or parenting time.

- I understand that either of us can take legal action to establish paternity instead of signing the ROP and that either of us may apply for paternity establishment services at our local child support office.

- I understand that either of us can choose to have genetic testing done before we sign the ROP.

- I accept responsibility to provide financial support for my child. I understand that a court can order financial support that can include payments for basic support, medical support and child care support starting from my child's birth until a court order for support ends.

- I understand that both parents have the right to all notices of any adoption proceedings.

- I understand that this is a legal document. If we are both age 18 or older when we sign this form, this ROP is the same as a court order determining the legal relationship between a father and a child.

- I understand that if either of us is under age 18 when we sign this form, this ROP is only a presumption of paternity. It is not final. I understand that this ROP will be the same as a court order determining the legal relationship between a father and child six months after the youngest of us turns 18. If I want to stop this ROP from becoming a legal document, I understand that I must take legal action before the six months ends.

- I understand that either of us can cancel this ROP by stating in writing that, "I am revoking the ROP." I understand that I must sign the revocation in front of a notary public and that I must file the revocation with the Office of the State Registrar within 60 days after I complete this ROP form. If I have not filed a revocation within 60 days and still want to cancel this ROP, I understand that I will need to take legal action to request a change to any of the information in this ROP.

- I understand that this ROP will not be considered valid if the mother of the child was married to another man at the time this child was conceived or born unless this ROP is filed in conjunction with a Husband's Non-paternity Statement.

- To the best of my knowledge, the information on this form is true.

- I am signing this form voluntarily. No one forced me to sign this ROP.

### Waiver of rights:

By signing this Minnesota Voluntary ROP form (DHS-3159), you give up the right to:

- Have blood or genetic testing done later to prove that the man is the biological father of the child

- Have an attorney represent you in a paternity proceeding

- A trial to determine if the man is the biological father of the child

- Cross examine witnesses in a paternity proceeding

- Testify about who is the biological father of the child in a paternity proceeding.

### Custody and parenting time information:

When a child is born to parents who are not married to each other the law gives custody of the child to the mother. If the father wants a different custody arrangement, he must go to court. If the parents cannot agree on parenting time, the father must go to court. If you have questions, please contact an attorney.