# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-0377

American Family Insurance Company a/s/o Nicholas Oelke,
Appellant,

vs.

NB Electric, Inc. dba East Side Garage Doors,
Respondent,

Morningstar Remodeling, LLC,
Respondent.

**Filed January 21, 2025**
**Reversed and remanded**
**Slieter, Judge**
**Dissenting, Cleary, Judge\***

Ramsey County District Court
File No. 62-CV-23-3965

Stephen A. Smith, Matthiesen, Wickert & Lehrer, S.C., Hartford, Wisconsin (for appellant)

Nicole R. Weinand, Law Office of John C. Syverson, London, Kentucky (for respondent NB Electric, Inc.)

Lance D. Meyer, Lukas F. Belflower, O'Meara Wagner, P.A., Minneapolis, Minnesota (for respondent Morningstar Remodeling, LLC)

Considered and decided by Slieter, Presiding Judge; Cochran, Judge; and Cleary, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SYLLABUS**

As used in Minnesota Statutes section 541.051, subdivision 1(c) (2022), the phrase "substantial completion, termination, or abandonment of the construction or the improvement to real property" refers to the project as a whole.

**OPINION**

**SLIETER**, Judge

This appeal involves appellant's subrogation action against respondent-contractors based on its claim of defective construction to the home of appellant's insured. The district court granted respondents' motions to dismiss based on the two-year statute-of-limitations period set forth in Minnesota Statutes section 541.051, subdivision 1 (2022). Appellant argues that the district court erred by determining that the statute of limitations began to run when appellant's insured terminated the initial general contractor, though he hired a new general contractor to finish the construction project. Because the construction project did not terminate upon the replacement of the general contractor, the cause of action had not yet accrued, and the district court erred in dismissing appellant's complaint on that basis. Therefore, we reverse and remand.

**FACTS**

The following facts are taken from the summary-judgment record and stated most favorably to appellant American Family Insurance Company. Moreover, we agree with the parties that there are no genuine issues of material fact relating to the statute-of-limitations issue, which is the sole basis of the district court's dismissal decision.

In February 2020, American Family's insured (the homeowner) hired respondent Morningstar Remodeling LLC to serve as the general contractor for a home-remodeling project. Morningstar subcontracted with respondent NB Electric Inc. to perform electrical work on the project. A fire damaged the home during construction in July 2020. The home-remodeling project continued following the fire, though NB Electric was no longer involved.

The homeowner terminated Morningstar in April 2021. Soon thereafter, the homeowner hired a new general contractor to complete the project. The home-remodeling project was substantially completed in July 2021. American Family commenced this action against Morningstar and NB Electric in July 2023, alleging defective construction.

The district court granted Morningstar's and NB Electric's motions to dismiss the complaint. The district court determined that the two-year statute-of-limitations period began to run in April 2021—when the homeowner terminated Morningstar as the general contractor—and, therefore, American Family's claims against Morningstar and NB Electric are time-barred under Minnesota Statutes section 541.051, subdivision 1(c).

American Family appeals.

**ISSUE**

Did the statute of limitations, as set forth in Minnesota Statutes section 541.051 (2022), begin to run when the homeowner terminated the general contractor but continued the construction project with a new general contractor?

**ANALYSIS**

At the outset we address the applicable standard of review. We note that this matter came before the district court as a rule 12 motion to dismiss. Minn. R. Civ. P. 12.02; *see also Oreck v. Harvey Homes, Inc.*, 602 N.W.2d 424, 427-28 (Minn. App. 1999) (noting that a statute-of-limitations defense may be raised in a motion to dismiss). However, at the time of its decision, the district court referred to several affidavits containing facts which were not included or referenced in the pleadings. When "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Minn. R. Civ. P. 12.02. Because the district court considered matters outside the pleadings which were not referenced in the pleadings, we treat the district court's order as one of summary judgment. *See NSP v. Minn. Metro. Council*, 684 N.W.2d 485 (Minn. 2004) (holding that a court may consider documents referenced in a complaint or pleading without converting the motion to one for summary judgment.)

"On an appeal from summary judgment, [appellate courts] ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district court] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). "When the district court grants summary judgment based on the application of a

statute to undisputed facts, the result is a legal conclusion that [appellate courts] review de novo." *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006).

"[S]tatutes of limitations are both procedural, in that they regulate when a party may file a lawsuit, and substantive, in that they are outcome determinative." *Lombardo v. Seydow-Weber*, 529 N.W.2d 702, 704 (Minn. App. 1995), *rev. denied* (Minn. Apr. 27, 1995). Statutes of limitations "spare the courts from litigation of stale claims," and parties from defending their case "after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Weavewood, Inc. v. S & P Home Inv., LLC*, 821 N.W.2d 576, 580 (Minn. 2012) (quoting *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945)).

The statute of limitations applicable to American Family's claim is found in Minn. Stat. § 541.051. The statute bars claims (except when fraud is involved) "to recover damages for any injury to property" arising out of "defective and unsafe condition" of improvements to real property "more than two years after the cause of action accrues." *Id.*, subd. 1(a). Resolution of this dispute requires us to interpret the statutory definition of when the cause of action accrues, which states:

> [A] cause of action accrues . . . for an action for injury to real or personal property, upon discovery of the injury, but in no event does a cause of action accrue earlier than substantial completion, termination, or abandonment of the construction or the improvement to real property.

*Id.*, subd. 1(c).

The parties agree that the discovery of the injury is not the accrual date. Instead, the crux of the parties' disagreement is about the meaning of the phrase "of the construction or the improvement to real property." Specifically, American Family suggests that the

statute is ambiguous and that, if we consider the legislative history, we will conclude this phrase applies to the entire construction project, not the individual contractor who is terminated. In contrast, Morningstar and NB Electric claim this language unambiguously means that the triggering events—substantial completion, termination, or abandonment—apply to an individual contractor rather than the entire construction project.

The first step in statutory interpretation is to determine whether the statute's language is ambiguous. *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013). To determine whether a statute is ambiguous, the court interprets the statute's words and phrases according to their plain and ordinary meaning. *Id.* at 536-37. "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Id.* at 537. If a statute is unambiguous, we will "enforce the language of the statute and not explore the spirit or purpose of the law." *Id.* (quotation omitted). We agree with respondents that the statute is unambiguous because we conclude that its language is not subject to more than one reasonable interpretation. *See id.*

If a statute, construed according to ordinary rules of grammar, is unambiguous, we apply its plain meaning. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn. 1996); *see also Leifur v. Leifur*, 820 N.W.2d 40, 43 (Minn. App. 2012) (noting a party's "meritorious policy arguments" supporting his proposed reading of a statute but rejecting that proposed reading because "this court may not disregard unambiguous statutory language").

As noted, Minn. Stat. § 541.051, subd. 1(c), states that a cause of action does not accrue "earlier than substantial completion, termination, or abandonment of the

6

construction or the improvement to real property." By these plain words, accrual of a cause of action begins no sooner than the occurrence of one of the three triggering events identified—substantial completion, termination, or abandonment—and each of the three triggering events pertains to the next phrase, "of the construction or improvement to real property." And, as we stated above, it is the meaning of this final phrase that the parties dispute.

The statute does not provide a definition for the term "construction" and, therefore, a reviewing court "may turn to dictionary definitions of the word." *Moore v. Robinson Env't*, 954 N.W.2d 277, 282-83 (Minn. 2021). And, although *Moore* analyzed subdivision 1(a), it defined the same term (construction) within the same section of statute and, therefore, informs our analysis. We next consider the facts in *Moore* to provide context to why that court was required to define the term "construction."

Moore hired Robinson to remove an asbestos-insulated boiler in his home because it was not working, along with the asbestos-lined piping. *Id.* at 278. Moore hired a separate contractor to install the new boiler and piping system. *Id.* at 279. More than two years after learning that asbestos existed throughout his home, Moore sued Robinson for injury to his property. *Id.* The district court dismissed the lawsuit as time-barred pursuant to Minn. Stat. § 541.051. Our court affirmed. *Id.* at 287. The issue before the supreme court in *Moore* was whether the removal of the asbestos was "construction" of the improvement to real property, thereby triggering the two-year statute of limitations. *Id.* at 282.[1] Moore

---

[1] Minnesota Statutes section 541.051 was amended in 2018, which amended language within subdivision 1(c) as we describe in this opinion. The previous language, which

argued that, unlike installation of the new boiler system, removing the boiler and removing asbestos-lined piping was not "construction." The supreme court, after considering the definition of "construction" from three different dictionary sources, concluded that the term "construction" means "actions that are necessary to move a *construction project* toward completion." *Id.* at 283 (emphasis added) (quotations omitted). Based upon this definition, the supreme court concluded that removing the asbestos was "a necessary part of the process of installing the new heating system" and was, therefore, "construction" which involved the two-year statute-of-limitations period. *Id.* at 286.

With the plain language of the statute, aided by the definition of "construction" provided in *Moore*, Minn. Stat. § 541.051, subd. 1(c), plainly links the three events triggering accrual of the statute of limitations—substantial completion, termination, or abandonment—to the entire construction project, not an individual contractor. As stated in *Moore*, "the statute tells us to view a contractor's coverage under the statute in light of the entire process of the building project." *Id.* at 283.

We are therefore not persuaded by respondents' argument that the phrase "construction or the improvement to real property" unambiguously refers to an individual contractor rather than the entire construction project. They argue that, once a contractor is terminated, the contract between that contractor and homeowner is terminated, which triggers the running of the statute of limitations. However, nowhere does section 541.051, subd. 1(c), refer to an individual contractor. Notably, the term "person" is referred to in

---

applied to the facts in *Moore*, stated that the accrual of the statute of limitations began upon discovery of the injury. *Id.* at 279-80 n.2.

section 541.051, subd. 1(a), when referring to an action that "shall be brought against any person." The absence of a similar reference of an individual contactor in section 541.051, subd. 1(c), supports this interpretation of this statute. "[D]istinctions in [statutory] language in the same context are presumed to be intentional, and we apply the language consistent with that intent." *In re Stadsvold*, 754 N.W.2d 323, 328-29 (Minn. 2008). Moreover, to interpret "termination" (or "substantial completion" and "abandonment") as applying to individual contractors would require replacing the term "construction" with the term "contractor," which we cannot do. *See Tracy State Bank v. Tracy-Garvin Coop.*, 573 N.W.2d 393, 395 (Minn. App. 1998) ("[T]his court is prohibited from adding words to a statute and cannot supply what the legislature either purposely omitted or inadvertently overlooked.").

We are also unpersuaded by respondents' claim that the phrase "termination" is a term of art in the construction industry that is specific to the construction contract, not the project as a whole and that thus, when the homeowner terminated the construction contract with Morningstar the statute of limitations began to run. However, we cannot ignore the plain words of the statute and we do not interpret a statute's meaning based upon a "term of art" that is neither present in, nor defined by, the statute. *See Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 931 N.W.2d 632, 634 (Minn. 2019) ("We construe words and phrases according to rules of grammar and according to their common and approved usage." (quotation omitted)).

Finally, we do not agree with respondents' claim that this interpretation of the statute leads to an absurd result. Respondents claim that this interpretation would mean a

9

homeowner, who terminates a contractor, could wait many months, or even years, before hiring a replacement contractor to resume the project without triggering the accrual of the limitations period. And, in that scenario, the terminated contractor would remain potentially liable for the defective construction long after having been terminated from the project.

Even if facts as those hypothesized by the respondents were to occur, we remain unpersuaded that this interpretation leads to an absurd result. The statute states that accrual begins upon "substantial completion, termination, or abandonment" of the construction project. Minn. Stat. § 541.051, subd. 1(c). Therefore, the hypothetical situation respondents present, creates a separate factual question as to whether a delay constitutes "termination" or "abandonment" of the construction such that the cause of action accrues under the statute. And a factual dispute regarding whether a project has been terminated or abandoned is not an "utterly absurd" result that "confounds [the] clear legislative purpose" of establishing when the statute of limitations begins to run. *See Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 827 (Minn. 2005) (stating an unambiguous statute may be deemed absurd "only in rare cases [when] the plain meaning utterly confounds a clear legislative purpose" (quotation omitted)).

It is undisputed that the homeowner hired a substitute general contractor soon after terminating respondents as contractors and continued the home-remodeling project. And, at that point in time, the project had not been substantially completed. There was, therefore,

10

no "substantial completion, termination, or abandonment" of the construction project and, as a result, no accrual of the cause of action.[2]

## DECISION

Because the home-remodeling project had not been substantially completed, terminated, or abandoned when respondents were terminated as contractors, American Family's cause of action had not yet accrued. The district court, therefore, erred in dismissing the complaint based upon the expiration of the statute of limitations.

**Reversed and remanded.**

---

[2] During oral argument counsel for Morningstar conceded that, if we conclude that the statute of limitations was not triggered when Morningstar was terminated, American Family's complaint was timely served.

**CLEARY**, Judge (dissenting)

I respectfully dissent from the majority opinion. I would affirm the district court in all respects.

As to Minn. Stat. § 541.051, subd. 1(c) (2022), I agree with the majority that the entire issue in controversy here, given the facts of this case, is the meaning of the phrase ". . . of the construction or the improvement to real property." It is after that point that we part company, as I agree with the respondents that the triggering events of "substantial completion, termination, or abandonment" apply unambiguously to individual contractors rather than to all contractors involved in the entire construction project until that project is completed at some future date. The majority decides otherwise and concludes that the plain language of the statute—specifically, the word "construction"—must mean the actions that are necessary to move a "construction project" toward completion, citing *Moore v. Robinson Env't*, 954 N.W.2d 277, 282-83 (Minn. 2021) (quotations omitted). Yet such an insight is of minimal help, since it begs the question of what is a "construction project?" For an electrical contractor, as an example, or a plumbing contractor, isn't the "construction project" limited to his or her subcontracted construction project? Does one automatically assume that having arrived at that definition we are to conclude that an individual contractor, when the injury to the property has been discovered and he or she has been terminated, is not subject to the immediate running of the statute of limitations found in Minn. Stat. § 541.051 (2022)? The majority leaps from "construction" to "construction project" to the "*entire* construction project." (Emphasis added). In doing so, it loses me along the way.

In further defense of its conclusion, the majority notes that nowhere in Minn. Stat. § 541.051, subd. 1(c), does the language refer to an individual contractor. Arguably, and just as noteworthy, the language of the statute fails to include any reference to all contractors or to all claims or, for that matter, to an "entire" construction project.

Finally, I believe that respondent Morningstar's argument that the statutory interpretation adopted here by the majority may well lead to absurd results has merit. There is no dispute here that the injury to property had been discovered and respondent contractors terminated more than two years before litigation ensued. The majority's rationale would leave that contractor in limbo for weeks, months, perhaps even years before the statute would commence running. The majority opines that if such a span of time elapsed, there would exist a factual dispute as to whether the construction project had been terminated or abandoned somewhere along the way. That is cold comfort to any contractor on any project who has substantially completed their part, or has been terminated from their part, and is forced to wait an indeterminate length of time before being safe from any claims, stretching a two-year window into something quite different in length.

In granting respondents' motions to dismiss, the district court correctly interpreted the language of Minn. Stat. § 541.051 and should be affirmed.