### Michelle Wilkins *vs.* City of Haverhill.

Essex. January 9, 2014. - May 9, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Negligence,* One owning or controlling real estate, Snow and ice, School. *Immunity from Suit. Snow and Ice. School and School Committee. Words,* "The public."

In a civil action alleging that the negligence of the defendant city caused the plaintiff's injuries when she slipped and fell on ice that had accumulated on the walkway of a public school owned and operated by the city, the Superior Court judge erred in granting the city's motion for summary judgment in which the city asserted a defense under G. L. c. 21, § 17C (which bars claims of ordinary negligence against a landowner, including a government entity, that has opened its land to the public for recreational, educational, or other enumerated purposes, without charging a fee), where the plaintiff entered the property not to participate in an educational or other enumerated activity open to the general public, but to attend a parent-teacher conference, an activity in which only the student, the student's parents, and the teacher could participate. [87-91]

Civil action commenced in the Superior Court Department on September 14, 2011.

The case was heard by *Robert A. Cornetta,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*John A. Finbury (Gina T. Dussi* with him) for the plaintiff.

*John J. Davis (Jason W. Crotty* with him) for the defendant.

*Stephen J. Finnegan,* for Massachusetts Association of School Committees, Inc., amicus curiae, submitted a brief.

*J. Michael Conley, Thomas R. Murphy, Alex G. Philipson, & Benjamin R. Zimmerman,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

Duffly, J. Michelle Wilkins was injured when she slipped and fell on ice that had accumulated on the walkway of a public school owned and operated by the city of Haverhill (city). At

the time of the fall, early in the evening of February 10, 2011, Wilkins was on the city's premises to attend a scheduled parent-teacher conference. Wilkins filed a complaint in the Superior Court against the city alleging that its negligence caused her injuries. In its motion for summary judgment, the city raised as a defense G. L. c. 21, § 17C, which bars claims of ordinary negligence against a landowner, including a government entity, that has opened its land to the public for recreational, educational, or other enumerated purposes, without charging a fee. A Superior Court judge allowed the city's motion; Wilkins appealed, and we allowed her application for direct appellate review. Because we conclude that the limitation on liability provided by G. L. c. 21, § 17C, extends solely to land open to the general public, and during the relevant time the school was open only to a discrete group and not to the general public, we reverse.[1]

*Discussion.* a. *Standard of review.* "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *HipSaver, Inc.* v. *Kiel,* 464 Mass. 517, 522 (2013). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). We review a grant of summary judgment de novo. *HipSaver, Inc.* v. *Kiel, supra.*

b. *Public use statute.* This case requires us to interpret the scope of the public use statute, G. L. c. 21, § 17C.[2] "We interpret a statute according to 'all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Johnson* v. *Kindred Healthcare, Inc.,* 466 Mass. 779, 783 (2014), quoting *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513 (1975).

In relevant part, G. L. c. 21, § 17C (*a*), provides:

"Any person having an interest in land including the

---

[1]We acknowledge the amicus briefs of the Massachusetts Association of School Committees, Inc., and the Massachusetts Academy of Trial Attorneys.

[2]We have referred to the statute as both the "public use statute" and the "recreational use statute." See *Ali* v. *Boston,* 441 Mass. 233, 235, 237 (2004).

structures, buildings, and equipment attached to the
land . . . who lawfully permits the public to use such land
for recreational, conservation, scientific, educational,
environmental, ecological, research, religious, or charitable
purposes without imposing a charge or fee therefor, . . .
shall not be liable for personal injuries or property damage
sustained by such members of the public . . . while on
said land in the absence of wilful, wanton, or reckless
conduct by such person."[3]

The city argues that Wilkins's claim is barred because she is "a
member of the public" and her attendance at a parent-teacher
conference qualifies as an "educational" purpose within the
meaning of the statute. The city concedes that the school was
not open to the general public at the time of Wilkins's fall, but
asserts that by holding parent-teacher conferences that are open
to a part of the community — parents of students enrolled at
the school — it has met the statute's threshold requirement that
the landowner permit use of the land by "the public." See G. L.
c. 21, § 17C (*a*). We do not agree that admission by such a
delimited group meets the statute's threshold requirement.[4]

The plain and ordinary meaning of the term "the public"
connotes broad public access and contemplates access by
members of the community as a whole. See Black's Law
Dictionary 1348 (9th ed. 2009) (defining "public" when used
as noun as "[t]he people of a nation or community as a whole");
Webster's Ninth New Collegiate Dictionary 952 (1991) ("pub-
lic" means "the people as a whole"). See also *Wellesley Col-
lege* v. *Attorney Gen.*, 313 Mass. 722, 732 (1943) (college did
not serve meals to "the public" for purposes of tax statute
where dining accommodations were "restricted to a small, well
defined number of classes"). Without establishing a general
rule, a number of prior appellate decisions have indicated that

---

[3]As originally adopted in 1972, the public use statute barred claims of
ordinary negligence for injuries suffered while on land that a landowner had
opened to the public for "recreational purposes." St. 1972, c. 575. In 1998,
the Legislature expanded the statute to encompass the public's use of land for
educational, charitable, and other purposes. St. 1998, c. 268.

[4]Municipalities may still seek immunity under the Massachusetts Tort Claims
Act, G. L. c. 258. See, e.g., *Barnett* v. *Lynn*, 433 Mass. 662, 664-666 (2001).

to be entitled to the public use statute's immunity from claims of ordinary negligence, a landowner must permit all members of the general public to have free and equal access to the land for one or more of the enumerated activities.[5] See *Ali* v. *Boston*, 441 Mass. 233, 235-236 (2004), citing 1967 Senate Doc. No. 1136, at 15-16 (public use statute intended to address increasing demand by "the general public" for recreational land); *Seich* v. *Canton*, 426 Mass. 84, 86 (1997) (public use statute applicable because "the plaintiffs, along with any other member of the public, could have gone to the school and observed the basketball game without paying a fee"); *Whooley* v. *Commonwealth*, 57 Mass. App. Ct. 909, 910 (2003) (statute applied because plaintiff "was no different from any other member of the public" who could enter ice rink and watch hockey game without paying fee).

This interpretation accords with the Legislature's "very purpose" of "encourag[ing] landowners to permit broad, public, free use of land" for such recreational or other activities.[6] See *Ali* v. *Boston*, *supra* at 238. Adopting the city's view that "the public" may include only a subset of the community would expand the statutory immunity from negligence beyond that which the Legislature intended by granting such immunity whenever a landowner invites a group of people onto the landowner's property for a recreational or other listed activity

---

[5]That there must be access by the general public does not preclude a landowner from "limit[ing] the types of recreational [or other] activities that are permitted on the land." *Ali* v. *Boston*, *supra* at 238 n.8. See *Perrine* v. *Kennecott Mining Corp.*, 911 P.2d 1290, 1293 (Utah 1996) ("Landowners may impose reasonable restrictions on the type of recreational activities allowed on their land, but they must allow all members of the public to engage in the approved activities to qualify for immunity"); *Cregan* v. *Fourth Memorial Church*, 175 Wash. 2d 279, 285 (2012) ("Permissible restriction could include limiting the types of recreational activity allowed on the land . . . [or] allow[ing] public access only during nonbusiness times"). Such restrictions even may include limiting the number of people allowed on the land at a given moment, provided that the method for doing so preserves equal access by all members of the general public (such as would be the case if admittance were on a first-come, first-served basis).

[6]The public use statute achieves this purpose by protecting such landowners from liability "in the absence of wilful, wanton, or reckless conduct," G. L. c. 21, § 17C (*a*), the same limited duty of care owed to trespassers. See *Ali* v. *Boston*, *supra* at 237.

free of charge. Such a construction would nullify the general rule that "[a]n owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises," *Dos Santos* v. *Coleta*, 465 Mass. 148, 154 (2013), citing *Davis* v. *Westwood Group*, 420 Mass. 739, 743 (1995), and would conflict with the Legislature's intent that individuals owed a lesser duty of care under the statute constitute only "a discrete subgroup" of the broader category of "lawful visitors," who are owed the ordinary duty of reasonable care. See *Ali* v. *Boston*, *supra* at 237.[7]

As a corollary to the requirement that a landowner must open the land to the public for certain enumerated purposes, the public use statute's immunity applies only to "such members of the public" who enter the property for the purposes for which the owner has permitted general access. See G. L. c. 21, § 17C (*a*); *Marcus* v. *Newton*, 462 Mass. 148, 155 (2012); *Ali* v. *Boston*, *supra* at 237-238. The statute does not apply if the injured party possessed some "other special permission or authorization" to be there. *Dunn* v. *Boston*, 75 Mass. App. Ct. 556, 560 (2009). See *Alter* v. *Newton*, 35 Mass. App. Ct. 142, 149 (1993) (public use statute did not apply to injury at school where "the plaintiff was not just a member of the public, but was . . . a student to whom [the city] owed a duty of care").

Here, the city has not shown that Wilkins entered on the school premises to participate in an educational or other enumerated activity open to the general public. Wilkins entered the property to attend a parent-teacher conference, an activity in which only the student, the student's parents, and the teacher may participate.[8] Even assuming that the city opened the school to all parents with students enrolled there, such an invitation

___

[7]Other States have employed similar reasoning in holding that their respective recreational use statutes do not apply unless the landowner has opened the property to the general public. See, e.g., *Conant* v. *Stroup*, 183 Or. App. 270, 275-281 (2002), and cases cited; *Perrine* v. *Kennecott Mining Corp.*, 911 P.2d at 1292-1293; *Cregan* v. *Fourth Memorial Church*, 175 Wash. 2d at 285-286.

[8]Such a conference involves an exchange of confidential information about the student, and the city lawfully could not have permitted the general public to attend. See, e.g., 20 U.S.C. § 1232g(b)(1) (2012) (prohibiting funding to educational institutions that permit release of students' education records without parents' written consent); 603 Code Mass. Regs. § 23.07(4) (2002)

still would apply only to a discrete segment of the general public. As the city concedes, the school was closed to individuals without enrolled students. The city argues that Wilkins's attendance afforded her an opportunity to participate in her child's educational experience, and that "[s]uch participation benefits not only the parent but the child as well." That a school serves a general educational purpose, however, does not suffice to put it within the public use statute. We do not agree that the benefit to the parent of a parent-teacher conference, albeit indirectly related to the child's education, constitutes an educational purpose for the parent within the meaning of the public use statute. In any event, such a benefit does not convert the activity into one that is open to the general public.[9]

*Judgment reversed.*

---

("no third party shall have access to information in or from a student record without the specific, informed written consent of the eligible student or the parent").

[9]Applying the public use statute to a school opened only for parent-teacher conferences would conflict with the Legislature's intent for another reason. The Legislature adopted the public use statute to encourage landowners to permit public use of their land "by limiting their obligations to lawful visitors under the common law." See *Ali* v. *Boston*, 441 Mass. 233, 238 (2004). Municipalities, however, need no such encouragement to open their schools for parent-teacher conferences. Various statutes and regulations direct schools and teachers to involve parents in their children's education, see, e.g., G. L. c. 15, § 1G (requiring establishment of school board advisory council on parent and community education and involvement); 603 Code Mass. Regs. § 35.03(3) (2011) (requiring teachers to be evaluated based on how well they engage, collaborate, and communicate with students' families); 603 Code Mass. Regs. § 35.04(3) (2011) (same as to school administrators), and parent-teacher conferences represent a natural and longstanding method for doing so. See, e.g., *Lenox Educ. Ass'n* v. *Labor Relations Comm'n*, 393 Mass. 276, 282 (1984) (affirming determination that teachers in Lenox have "customarily and traditionally" met with parents after school hours). See also 20 U.S.C. § 6318(d)(2)(A) (2012) (conditioning Federal funding to eligible elementary schools on existence of annual parent-teacher conferences). Applying the public use statute under these circumstances would upend the balance that the Legislature intended to strike "between encouraging public access to private land and protecting landowners from liability for injuries." *Ali* v. *Boston, supra* at 236.