**Corey John OURADNIK, Appellant,**

v.

**Robert John OURADNIK, Respondent.**

**A16-1516**

Court of Appeals of Minnesota.

Filed May 8, 2017

Review Granted July 18, 2017

James S. Ballentine, Matthew J. Barber, Richard L. Tousignant, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota (for appellant).

Troy A. Poetz, Matthew W. Moehrle, Steven A. Bader, Rajkowski Hansmeier, Ltd., St. Cloud, Minnesota (for respondent).

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

## OPINION

BRATVOLD, Judge

Appellant-son was hunting on respondent-father's land and was injured while climbing into a deer stand. Appeal-

ing from a judgment, appellant challenges the district court's decision granting partial summary judgment in favor of respondent. Appellant argues that the district court erred in its interpretation of Minn. Stat. § 604A.22, the recreational-use statute, and, as a result, erroneously instructed the jury on the duty of care. Because it is undisputed that respondent did not offer his hunting land for public use, we conclude the recreational-use statute does not apply to limit respondent's liability. Thus, the district court erred in granting partial summary judgment for respondent and in its jury instructions. We reverse and remand for a new trial.

## FACTS

Respondent Robert Ouradnik owns approximately 40 acres of land in Pine County; he lives on the property with his wife and hunts there with his adult children. Appellant Corey Ouradnik is one of Robert's three adult sons. Before his sons were allowed to hunt on his land, Robert expected them to notify him, which they did. Robert has excluded extended family from his hunting land and has not opened the land to the public for hunting or other recreational activities. Robert has posted "no trespassing" signs on his land.

On November 10, 2012, Corey climbed into a deer stand on Robert's property. The stand was mounted on a tree and accessed by climbing up board steps that were attached to the tree trunk. A board gave way, causing Corey to fall approximately 16 feet to the ground. Corey injured his right leg and left ankle and needed surgery.

Robert built and maintained the stand from which Corey fell; the stand was one of several that Robert built sometime after he bought the property in approximately 2002. Shortly before the accident occurred, Robert re-secured the steps, which were

fastened to the tree with nails, by counter-sinking six-inch screws to "make them more secure." Although Robert completed this task with several deer stands, he did not add screws to the board that failed because he ran out of screws.

Corey filed suit, and Robert moved for summary judgment, arguing that he was "shielded from liability" under Minnesota's recreational-use statute, Minn. Stat § 604A.20. The district court concluded that the recreational-use statute applied to limit Robert's liability and granted partial summary judgment because Robert gave permission to Corey to use the land without charge for recreational purposes. The recreational-use statute, however, provides that a qualifying landowner continues to have the duties owed to a trespasser. The district court concluded that whether Robert was liable under the "trespasser exception" raised fact questions and set the case for trial.

The jury found that Robert did not have actual knowledge that the steps were likely to cause injury, the condition of the steps was not hidden from Corey, Corey was 95% at fault and Robert was 5% at fault. The district court directed entry of judgment for Robert. Corey moved the district court for a new trial, arguing in part, that Robert's duties were broader than under the trespasser exception and the district court erred in instructing the jury on Robert's duties. The district court denied the motion, and this appeal follows.

## ISSUE

Did the district court err in concluding that the recreational-use statute applies to limit respondent's liability when it is undisputed that respondent's private land was not offered to the public for recreational purposes?

## ANALYSIS

The sole issue on appeal is whether the recreational-use statute limits liability only for owners who open their private land for public use or whether it protects owners who exclude the public but give permission to family members to use their land for recreational purposes without charge. Corey argues that the district court erred when it interpreted the liability-limiting language of the statute in isolation and without considering the policy provision that the legislature enacted as part of the statutory framework. Robert argues that the plain language of the statute limits his liability based on the undisputed facts in this case.

This court reviews de novo a district court's decision "grant[ing] summary judgment based on its application of statutory language to the undisputed facts of a case." *Lefto v. Hoggsbreath Enters. Inc.*, 581 N.W.2d 855, 856 (Minn. 1998). Statutory interpretation is a question of law that appellate courts review de novo. *Christianson v. Henke*, 831 N.W.2d 532, 535 (Minn. 2013). We agree with the parties that the facts relevant to the application of the recreational-use statute are undisputed.

"The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." *Id.* at 536 (quotation omitted). A statute is ambiguous when its language is subject to more than one reasonable interpretation. *Amer. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted). In interpreting a statute we construe words and phrases according to their plain and ordinary meaning, with reference to common usage in a dictionary. *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016).

Our goal in statutory interpretation is to ascertain and effectuate the legislature's intent. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Schroedl*, 616 N.W.2d at 277. Sometimes, the operation of a statute only "becomes clear when it is read in conjunction with the rest" of the relevant act. *Id.* at 278. "[N]o word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Christianson*, 831 N.W.2d at 538 (quotation omitted). If a statute is unambiguous, its spirit or purpose will not be explored. *Id.* at 537. If ambiguity is present, this court examines legislative history and other indicia of legislative intent. Minn. Stat. § 645.16 (1)–(8) (2016).

■ In reaching the conclusion that the recreational-use statute requires an owner of private land to offer his land to the public before receiving the statute's protections, we initially interpret the recreational-use statute, including the legislature's policy statement. Next, we interpret the plain meaning of "public" use. Third, we briefly address legislative intent. Fourth, we compare our interpretation of Minnesota's recreational-use statute to that of other states with similar provisions. Finally, we consider whether Corey is entitled to a new trial.

## I. The recreational-use statute's liability limitations must be interpreted consistently with its policy statement.

In chapter 604A, Minnesota has adopted several civil-liability limitations, including what is titled "Public Benefit or Function Activities," and commonly called Minnesota's recreational-use statute, Minn. Stat. §§ 604A.20–.27 (2016). The recreational-use statute has eight sections; these sections include an express policy statement, some relevant definitions, an owner's duty of care or duty to warn those who use the

land, and other landowner and land-user liability provisions. Important to this appeal, Minnesota's recreational-use statute alters a landowner's common law duty of reasonable care to those who enter private land with permission. *Peterson v. Balach*, 294 Minn. 161, 163–64, 199 N.W.2d 639, 642 (1972).

In section 604A.20, the legislature stated that the policy is "to encourage and promote the use" of "privately owned lands and waters by the public for beneficial recreational purposes and the provisions of sections 604A.20 to 604A.27 are enacted to that end." An owner's duty of care and duty to warn persons on recreational land is limited if the owner (1) gives "written or oral permission" for (2) use of the land "for recreational purposes" (3) without charge. Minn. Stat. § 604A.22.[1] The recreational-use statute does not eliminate all liability for qualifying owners because it preserves liability "for conduct which, at law, entitles a trespasser to maintain an action and obtain relief" to those persons allowed to use land for recreational purposes at no charge. Minn. Stat. § 604A.25. This section is often referred to as the "trespasser exception."

The district court reasoned that the plain language of section 604A.22 "only requires" three elements and "there is no language in the statute itself establishing a requirement that landowners must open their land to the entire general public," therefore, the district court would not "legislate such a requirement." Because it was undisputed that Robert satisfied the three elements set out in section 604A.22, the district court granted partial summary judgment to Robert.

We conclude that the district court erred in interpreting section 604A.22 without regard to the policy statement in section 604A.20. A court must "read and construe a statute as a whole and must interpret each section in light of the surrounding sections." *Schroedl*, 616 N.W.2d at 277. In chapter 604A, the legislature not only enacted an explicit policy statement, but also declared that "the provisions of sections 604A.20 to 604A.27 are enacted to that end." Minn. Stat. § 604A.20. The "end" identified by the legislature is to "encourage and promote the use of ... privately owned lands and waters *by the public* for beneficial recreational purposes." *Id.* (emphasis added). By interpreting the liability-limiting provisions found in section 604A.22 in isolation, the district court failed to give effect to the legislature's explicit mandate that an owner's liability be limited where privately owned lands are used by the public for recreational purposes.

▪▪▪ Without citing any legal authority, Robert contends that section 604A.20 is a "preamble" and is therefore not given effect when construing the recreational-use statute. This premise fails for two reasons. First, a preamble is a statement describing or clarifying a law and is not enacted by the legislature. *See Carlson v. Lilyerd*, 449 N.W.2d 185, 191 (Minn. App. 1989) (citing preambles of several statutes when interpreting the meaning of language in a statute), *review denied* (Minn. Mar. 8, 1990). Thus, the policy statement in section 604A.20, which was enacted by the legislature, is not a preamble.

---

1. Specifically, section 604A.22 provides, in part, that, "an owner who gives written or oral permission for the use of the land for recreational purposes without charge" has limited liability, as follows: "(1) owes no duty of care to render or maintain the land safe for entry or use by other persons for recreational purpose; (2) owes no duty to warn those persons of any dangerous condition on the land, whether patent or latent; (3) owes no duty of care toward those persons except to refrain from willfully taking action to cause injury; and, (4) owes no duty to curtail use of the land during its use for recreational purpose."

Second, appellate courts have routinely looked to enacted policy statements while interpreting statutes. *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 8 (Minn. 2008) (construing state building code); *In re PERA Police & Fire Plan Line of Duty Disability Benefits of Brittain*, 724 N.W.2d 512, 518 (Minn. 2006) (construing Minn. Stat. § 353.656 (2004)); *Schroedl*, 616 N.W.2d at 278 (construing no-fault automobile insurance act); *Carlson*, 449 N.W.2d at 189–90 (construing Minn. Stat. § 500.24 (1986)); *see also Snyder v. Olmstead*, 261 Ill.App.3d 986, 199 Ill.Dec. 703, 634 N.E.2d 756, 760–61 (1994) (construing the Illinois recreational-use statute in light of its enacted policy statement to promote public use and holding the purpose "would not be advanced" if the act were applied "where an owner does not open his property to the public, but simply invites a few private persons to a picnic"), *appeal denied* (Ill. Oct. 6, 1994). Because statutes should be construed in context, it is not merely appropriate to consider the legislature's policy statement when interpreting the recreational-use statute, but a court is specifically directed to give the policy statement reasonable meaning and not render it superfluous. *Schroedl*, 616 N.W.2d at 278; *Amaral*, 598 N.W.2d at 384.

Our view that the policy statement in section 604A.20 guides our interpretation of the liability-limiting provisions in section 604A.22 is consistent with precedent. When our supreme court has previously interpreted a statute, "that interpretation guides us in reviewing subsequent disputes over the meaning of the statute." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012).

In *Hughes v. Quarve & Anderson Co.*, the supreme court considered whether the recreational-use statute required a landowner to open its quarry pond "for public use" before receiving the statute's protections.[2] 338 N.W.2d 422, 427 (Minn. 1983). *Hughes* held that "the Recreational Use Statute has no application where the defendant landowner does not offer the [land] in question for public use and, indeed, claims here that it has discouraged the public from using the [land] as a public facility." 338 N.W.2d at 427. This court has also considered the question and has read *Hughes* as holding that "the recreational-use statute [is] inapplicable when the land is not offered for public use." *Watters v. Buckbee Mears Co.*, 354 N.W.2d 848, 852 (Minn. App. 1984).

In deciding Robert's motion for summary judgment, the district court interpreted *Hughes* narrowly, concluding that the recreational-use statute does not apply because the plaintiff in that case did not have permission to be on the quarry owner's land. While permission to use the land certainly differentiates Corey from the *Hughes* respondent, the district court overlooked the central message from *Hughes*: the recreational-use statute is interpreted by giving effect to the legislature's express policy statement. Thus, the district court erred when it failed to recognize that the recreational-use statute requires public use before ascertaining whether the landowner has satisfied the three elements required to limit liability.

## II. The plain meaning of "public" is community.

The district court appears to have concluded that summary judgment was war-

2. *Hughes* interpreted Minn. Stat. §§ 87.01, 87.0221, 87.023, and 87.025. *Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422, 427 n.1 (Minn. 1983). As discussed later in this opinion, the language of these provisions of the recreational-use statute are nearly the same as the current statute.

ranted even if section 604A.22 is to be read together with the public-use requirement stated in section 604A.20. The district court noted that the parties have two different views of what is meant by "public" in section 604A.20. Corey contended that public means "the entire general public—nothing less." Robert claimed that the public includes "any single person who does not otherwise have a right of entry onto the land."

The district court stated that it was persuaded by Robert's position because, if an owner is required to open the land to the "entire general public" "few would do so and the purpose and intent of the [statute] will be frustrated." In a footnote, the district court noted that Corey was a member of "the public" because he had no right to enter the land without his father's permission. This analysis suggests the district court concluded that, if the public-use requirement in section 604A.20 applies, the term "public" is ambiguous, and the policy goals of this statute are accomplished when "public" means any single member of the public that receives permission from the landowner. *See Christianson*, 831 N.W.2d at 537 (noting that when statutory terms are ambiguous, court may examine legislature's purpose).We disagree.

▪ Based on the plain meaning of "public," we conclude that the term is unambiguous and means community, which is more than a few family members. The legislature did not define the term "public" in the recreational-use statute. Minn. Stat. § 604A.21. Turning to common usage, "public," as a noun, means "[t]he people of a country or community as a whole."

*Black's Law Dictionary* 1422 (10th ed. 2014). "Public" also means the "community or the people as a whole" or a "group of people sharing a common interest." *The American Heritage College Dictionary* 1126 (4th ed. 2007). In fact, an antonym of public is "restricted." *See Roget's II: The New Thesaurus*, 780 (1988). Thus, the district·court erred in concluding that the public-use requirement was satisfied when any single person, like Corey, received permission from the owner to use land for recreational purposes.[3]

▪ In short, we conclude that the recreational-use statute is unambiguous. Based on the plain language of sections 604A.20 and 604A.22, an owner must offer private land to the general public before receiving liability-limiting protections in those circumstances where the owner has (1) given "written or oral permission" for (2) use of the land "for recreational purposes" (3) without charge. Minn. Stat. §§ 604A.20, .22.

## III. The district court erred in its analysis of legislative intent.

Our interpretation of section 604A.22 gives effect to legislative intent, which we will briefly analyze through legislative history. The legislature first adopted the recreational-use statute in 1961. 1961 Minn. Laws. ch. 638, §§ 1–4, at 1192–93 (now codified at Minn. Stat. §§ 604A.20–.27). Even at its inception, the recreational-use statute contained an express policy statement that is nearly identical to the language found today in section 604A.20. Minn. Stat. § 87.01 (1961). In the original version, the policy underlying the recre-

---

3. We note that other jurisdictions have recognized recreational-use immunity may protect an owner that opens land to specific groups. *See generally Herring v. Hauck*, 118 Ga.App. 623, 165 S.E.2d 198, 199 (1968) ("As we construe that section, one must permit the free use of his facilities or land by the public generally or by a particular class of the public, such as Little Leaguers [or] Boy Scouts."). This parties do not raise this issue and we do not decide it here.

ational-use statute was to "promote the use of privately owned lands and waters *by the public* for beneficial outdoor recreational purposes." *Id.* (emphasis added).

The legislature has amended the statute at least twice, but has never modified the requirement that private lands be open for use by the public and, in fact, has continued to embrace essentially the same policy statement. *Compare* Minn. Stat. § 87.01 (1961) *and* Minn. Stat. § 87.01 (1974) *with* Minn. Stat. § 604A.20 (1994) *and* Minn. Stat. § 604A.20 (2016). Notably, the recreational-use statute we examine in this appeal was re-codified in 1994, well after the supreme court's decision in *Hughes*. 1994 Minn. Laws, ch. 623, art. 4, §§ 1–8, at 1497–99. We presume that the legislature is aware of the supreme court's interpretation of Minnesota statutes and that interpretation gains credence when the legislature revisits a statute after the court's interpretation and does not modify the language. Minn. Stat. § 645.17(4) (2016) ("when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language.").

The district court concluded that the legislature's intent to promote use of private lands for recreational purposes will be undermined if a landowner must give permission to the general public before liability limitations apply. Similarly, Robert contends that a "prudent landowner will not hold land open to the general public without restrictions." Robert also argues that the policy behind the recreational-use statute is to "encourage landowners to allow others to use their lands for [ ] potentially risky activities" with the liability limitation as a "trade off" for the owner.

■ We reject these contentions for two reasons. First, the legislature identified its policy goal when it adopted section 604A.20, and that policy makes no mention of "risky activities." In fact, the recreational uses identified in the statute include many activities that are not usually considered risky, such as picnicking, firewood gathering, and nature study. Minn. Stat. § 604A.21, subd. 5. Second, even if we assume that owners will not offer their lands to the public for recreational use, we cannot ignore the legislature's express policy statement in interpreting the recreational-use statute, nor can we disregard the plain meaning of the word "public." It is for the legislature to decide how well a statute achieves its stated objective, and, to modify it accordingly. *See Olson v. Ford Motor Co.*, 558 N.W.2d 491, 496 (Minn. 1997) ("Our role, in any case, is not to challenge the wisdom of the legislature's act from a distance, but rather to give effect to its will as expressed in the ... statute.").

Robert also raises practical considerations that we do not find persuasive. Robert argues that requiring an owner to offer his land to the public would be "unworkable" because hunters must seek permission to hunt on private land, citing Minn. Stat. § 97B.001, subd. 2 (2016). But the statute Robert relies on is limited to "agricultural land," and does not cover non-agricultural land, such as the land Robert owns. Additionally, the recreational-use statute requires "written or oral permission" before liability limitations apply, so the agricultural-lands provision is consistent with the recreational-use statute and not in conflict.

■ Robert also claims that a broad view of "public" means every owner seeking the protections of the recreational-use statute would have to post private land as "open to the public." But Minnesota law defines trespassers, in part, as those who enter posted land without permission for outdoor recreation. Minn. Stat. § 97B.001,

subd 4(1). In other words, if an owner does *not* post private land with a "no trespassing" sign, those who enter for recreational purposes are not considered trespassers under Minnesota's hunting statute. We conclude the public-use requirement in section 604A.20 of the recreational-use statute appears relatively easy to satisfy. In sum, our interpretation of the recreational-use statute gives effect to the legislature's express intent to promote public use of private lands for recreational use.

## IV. Other states have interpreted similar statutory provisions to require public use.

Our interpretation of the recreational-use statute aligns with similarly worded recreational-use statutes in other jurisdictions. Minnesota, like many other states, based its recreational-use statute on a model act. Note, *The Minnesota Recreational Use Statute: A Preliminary Analysis*, 3 Wm. Mitchell L. Rev. 117, 123 (1977). Because this statute is based on a model act, we attempt to interpret it consistently with how other states have interpreted their recreational-use statutes. *See, e.g., In re Estate of Sullivan*, 868 N.W.2d 750, 753 (Minn. App. 2015) (construing portion of Uniform Probate Code consistently "with other jurisdictions that have adopted a similar provision" of the Code); *see* Minn. Stat. § 645.22 (2016) ("Laws uniform with those of other states shall be interpreted and construed to effect their general pur-

pose to make uniform the laws of those states which enact them.").

Like Minnesota's recreational-use statute, the recreational-use statutes in Georgia, Massachusetts, and Oregon include language requiring landowners to open their land to the public for recreational purposes to avail themselves of the statute's protections. Ga. Code Ann. § 51-3-20 (2016) ("The purpose of this article is to encourage owners of land to make land and water areas available *to the public* for recreational purposes." (emphasis added)); Mass. Gen. Laws ch. 21 § 17C(a) (2016) ("Any person having an interest in land ... who lawfully *permits the public* to use such land for recreational ... purposes" is not liable for personal injuries "sustained by such *members of the public*." (emphasis added)); Or. Rev. Stat. § 105.676 (2015) ("it is the public policy of the State of Oregon to encourage owners of land to make their land available *to the public* for recreational purposes." (emphasis added)). Accordingly, each of these jurisdictions has construed its statutes as requiring the owners to allow the general public to use their land before the owners may avail themselves of the limited liability offered by the statute. *Herring v. Hauck*, 118 Ga. App. 623, 165 S.E.2d 198, 199 (1968); *Wilkins v. City of Haverhill*, 468 Mass. 86, 8 N.E.3d 753, 756 (2014); *Conant v. Stroup*, 183 Or.App. 270,51 P.3d 1263, 1265–66 (2002).[4]

---

4. Robert cites to the statutes and caselaw of Nebraska, Missouri, and Kansas to support his position. We disagree with his analysis of the foreign statutes and caselaw. For example, Nebraska slightly narrows the public-use requirement under its reading of the statute, the Nebraska Supreme Court has stated that, in a situation not unlike this one, "the Legislature ... did not intend that a child invited to her friend's home constitutes a member of the 'public.'" *Brown v. Wilson*, 252 Neb. 782, 567 N.W.2d 124, 128 (1997). Additionally, Robert's contention that Nebraska's recre-

ational-use statute "did not require public use before its protection would apply" is incorrect. While it is true that Nebraska does not require an owner to open his land to the public at large, it does require an owner to, at the least, allow some members of the public to use the land. *Holden v. Schwer*, 242 Neb. 389, 495 N.W.2d 269, 273–74 (1993) ("[A] landowner need allow only some members of the public ... to enter and use his land for recreational purposes to enjoy the protection of the act.").

## V. The district court erred in denying a new trial.

Because Minnesota's recreational-use statute requires owners to offer their land for public use before they can avail themselves of the protections of the statute, we conclude that the jury instruction regarding Robert's duty of care was erroneous. When an "erroneous jury instruction results in substantial prejudice, a new trial should be granted." *Youngquist v. W. Nat. Mut. Ins. Co.*, 716 N.W.2d 383, 386 (Minn. App. 2006). "An error is prejudicial if there is a reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted). The jury was charged that Corey had to prove Robert was liable under the trespasser exception; *i.e.*, that (1) the board steps were likely to cause serious injury or death, (2) Robert had actual knowledge of the danger, and (3) the condition of the steps was hidden from Corey. This instruction misstated the duty of care owed by Robert. *Peterson*, 294 Minn. 161, 174, 199 N.W.2d 639, 647; *see also Domagala v. Rolland*, 787 N.W.2d 662, 674–75 (Minn. App. 2010 (concluding that erroneous jury instruction regarding respondent's duty of care was prejudicial and remanding for new trial), *aff'd* (Minn. Oct. 26, 2011). Thus, we remand for a new trial with appropriate jury instructions to reflect Robert's duty of reasonable care.

## DECISION

Minn. Stat. § 604A.20 to .27 requires an owner to offer private land for use by the general public before seeking limited liability by giving written or oral permission to use the land for recreational purposes without charge. The district court erred in granting partial summary judgment for respondent on this issue and in its instructions for the jury. Thus, we reverse the district court's decision and remand for a new trial.

**Reversed and remanded.**