**James POEHLER, Appellant/Cross-Respondent,**

v.

**CINCINNATI INSURANCE COMPANY, Respondent/Cross-Appellant.**

**A15-0958**

Supreme Court of Minnesota.

Filed: July 19, 2017

---

Court of Appeals

Alexander M. Jadin, Anthony T. Smith, Timothy D. Johnson, Roeder Smith Jadin, PLLC, Bloomington, Minnesota, for appellant/cross-respondent.

Anthony J. Kane, Pfefferle Kane LLP, Minneapolis, Minnesota, for respondent/cross-appellant.

Dale O. Thornsjo, Lance D. Meyer, O'Meara, Leer, Wagner & Kohl, P.A., Minneapolis, Minnesota, for amici curiae The Insurance Federation of Minnesota and The National Association of Mutual Insurance Companies.

## OPINION

HUDSON, Justice.

The focus of this appeal is on the permissibility of preaward interest on an insurance appraisal award under Minn. Stat. § 549.09, subd. 1(b) (2016). The case presents three questions: (1) whether the recovery of preaward interest under Minn. Stat. § 549.09, subd. 1(b), requires a finding of an underlying breach of contract or actionable wrongdoing; (2) whether an insured may recover preaward interest on an appraisal award for a fire insurance loss when the insurance policy contains a loss payment provision stating that the loss is not payable until an appraisal award is filed; and (3) whether an insured may recover preaward interest on an appraisal award under the Minnesota standard fire insurance policy, Minn. Stat. § 65A.01 (2016), even though the insurer did not adopt the exact statutory language in its insurance policy. For the reasons that follow, we reverse the decision of the court of appeals.

## FACTS

Respondent/cross-appellant Cincinnati Insurance Company (Cincinnati) issued appellant/cross-respondent James Poehler (Poehler) a homeowner's insurance policy that provided replacement cost coverage for Poehler's home and personal property. As required by statute, the policy included an appraisal clause, providing that either the insurer or the insured may demand an appraisal if they cannot agree on the amount of the loss. See Minn. Stat. § 65A.01, subd. 3. The policy also contained a statutorily-mandated loss payment provision, providing that the loss is payable within 5 working days after the insured files an appraisal award with the insurer.

A fire damaged Poehler's property in October 2013. Poehler promptly notified Cincinnati of the damage, and Cincinnati made its first payment on the claim a week after the fire. On December 2, 2013, Poehler properly demanded an appraisal under the appraisal clause of the policy, which requires a "written request" from the demanding party. By then, Cincinnati had paid Poehler $105,394.

Cincinnati continued making payments and had paid a total of $175,663 by the time an appraisal hearing was held in June 2014. The parties authorized the appraisers to decide "all issues" involving the claim, including coverage issues. At the appraisal hearing, Poehler argued that he was entitled to an additional $170,442 beyond what Cincinnati had already paid for the loss; Cincinnati argued that Poehler was entitled to an additional $57,965. On June 23, 2014, the appraisers issued an award, determining that Poehler's total loss was $88,480 more than what Cincinnati had paid by the time of the appraisal

hearing. Cincinnati paid the appraisal award in full on July 9, 2014.[1]

Poehler subsequently brought a motion in Hennepin County District Court, seeking, among other relief, confirmation of the appraisal award under the Uniform Arbitration Act, Minn. Stat. § 572B.22 (2016), and preaward interest under Minn. Stat. § 549.09, subd. 1(b). Cincinnati responded that confirmation of the appraisal award was unnecessary because it had already paid the full award, and it should not be required to pay preaward interest because it had promptly complied with all the terms of the policy and the appraisal award. The district court confirmed the appraisal award and granted Poehler preaward interest in the amount of $14,635. In concluding that Poehler was entitled to preaward interest, the district court noted that Cincinnati had "initially undervalued Poehler's loss by more than $88,000," leaving him "to bear a significant portion of the burden of his loss." The district court calculated the preaward interest from December 2, 2013, the date Poehler demanded an appraisal, to June 23, 2014, the date of the award, which was 203 days later. Based on the appraisal award and the preaward interest period, the district court calculated preaward interest as follows: "203/365 x $263,144.04 x 10% = $14,635.13."

The court of appeals reversed, concluding that the preaward interest statute, Minn. Stat. § 549.09, subd. 1(b), "does not apply to appraisal awards pursuant to an insurance policy in the absence of an underlying breach of contract or actionable wrongdoing." *Poehler v. Cincinnati Ins. Co.*, 874 N.W.2d 806, 807 (Minn.App. 2016).

Poehler sought review of the court of appeals' decision and Cincinnati requested conditional cross-review. We granted both parties' petitions.

## ANALYSIS

### I.

We begin with the question of whether the court of appeals erred in holding that Minn. Stat. § 549.09 requires a finding of "an underlying breach of contract or actionable wrongdoing" for the recovery of preaward interest on an insurance appraisal award, *Poehler*, 874 N.W.2d at 807. Poehler contends that the court of appeals' interpretation of section 549.09 is contrary to the statute's plain language and legislative purpose, as well as the court of appeals' prior decisions. In response, Cincinnati argues that under section 549.09 preaward interest is only provided for awards of "damages," and Minnesota courts have defined "damages" solely as compensation for wrongdoing. We conclude that the court of appeals erred in its interpretation of the statute, because Minn. Stat. § 549.09 does not require a finding of wrongdoing for the recovery of preaward interest on appraisal awards.

We review statutory interpretation issues de novo. *Christianson v. Henke*, 831 N.W.2d 532, 535 (Minn. 2013). In interpreting a statute, we first "determine whether the statute's language, on its face, is ambiguous." *Id.* at 536 (citation omitted) (internal quotation marks omitted). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Id.* at 537. If we determine that a statute is clear and unambiguous, our

---

1. Although the policy provides that the loss became payable within 5 working days after the filing of an appraisal award and Cincinnati paid the loss more than 5 working days after the filing of the appraisal award, the district court noted that Poehler had not argued that Cincinnati was late in paying the loss under the loss payment provision of the policy.

"role is to enforce the language of the statute and not explore the spirit or purpose of the law." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012).

Minnesota Statutes § 549.09, subd. 1(b), states, in relevant part,

> *Except as otherwise provided by contract or allowed by law,* preverdict, preaward, or prereport interest on *pecuniary damages* shall be computed ... from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first, except as provided herein....
>
> Except as otherwise provided by contract or allowed by law, *preverdict, preaward, or prereport interest shall not be awarded on the following*:
>
> (1) judgments, *awards*, or benefits in workers' compensation cases, but not including third-party actions;
>
> (2) judgments or *awards* for future damages;
>
> (3) *punitive damages, fines, or other damages that are noncompensatory in nature*;
>
> (4) judgments or *awards* not in excess of the amount specified in section 491A.01; and
>
> (5) that portion of any verdict, *award*, or report which is founded upon interest, or costs, disbursements, attorney fees, or other similar items added by the court or arbitrator.

(Emphasis added.)

Section 549.09 plainly and unambiguously provides preaward interest on "pecuniary damages"—including those awarded in insurance appraisals—that are not otherwise excluded by the statute.[2] The statute, however, does not define "pecuniary" or "damages," Minn. Stat. § 549.09, nor have we interpreted either term in the context of the statute. The parties here dispute the definition of "damages."

In determining whether a statute is ambiguous, we give technical words and phrases their special or defined meaning, and other words and phrases their plain and ordinary meaning. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264, 266 (Minn. 2013). Although Cincinnati contends that "damages" is a legal term that is defined as compensation for wrongdoing only, we have held that the term "damages" does not have an accepted technical meaning in the insurance industry.[3] *Minn. Min. & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn. 1990).

Because we conclude that the term "damages" does not have a technical meaning, we interpret it according to its plain and ordinary meaning. In determin-

---

2. The dissent argues that "the parties' appraisal proceeding does not trigger a right to preaward interest," and by allowing Poehler to recover preaward interest on his appraisal award, we have "ignor[ed] the mandatory triggers for preaward interest" in Minn. Stat. § 549.09, subd. 1(b). However, in calculating preaward interest, the district court found that the statutory preaward interest began accruing on the date that Poehler demanded an appraisal—a demand that the insurance policy required in writing. In other words, the district court found that Poehler's demand for appraisal was the triggering event. Notably, Cincinnati never challenged the validity of Poehler's demand for appraisal or argued that the demand was not in writing. Nor has Cincinnati contended that Poehler's demand for appraisal was not a triggering event. Because the parties have not challenged this finding of the district court, the triggering-event issue raised by the dissent is not properly before us.

3. The cases and secondary literature cited by Cincinnati deal exclusively with factual scenarios or areas of law that involve wrongdoing. Accordingly, the authors of these sources contemplated a meaning of "damages" only in contexts that involve wrongdoing.

ing the plain and ordinary meaning of undefined words or phrases in a statute, we may consult the dictionary definitions of those words and apply them in the context of the statute. *See Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 297 (Minn. 2016). In general, dictionaries define "damages" as compensation for loss, injury, or wrong. For example, *Webster's* defines "damages" as "the estimated reparation in money for detriment or injury sustained: compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right." *Webster's Third New International Dictionary of the English Language Unabridged* 571 (2002). *The American Heritage Dictionary* defines "damages" as "[m]oney required to be paid as compensation for an injury or wrong." *The American Heritage Dictionary of the English Language* 457 (5th ed. 2011). *New Oxford* defines "damages" as "a sum of money claimed or awarded in compensation for a loss or an injury." *New Oxford American Dictionary* 439 (3d ed. 2010). Thus, the ordinary meaning of "damages" is not limited to compensation for wrongdoing only; rather, it extends to compensation for any injury suffered, whether wrongful or not.

In addition, unless otherwise provided by contract or law, subdivision 1(b)(3) of section 549.09 precludes the recovery of preaward interest on "damages that are noncompensatory in nature." Minn. Stat. § 549.09, subd. 1(b)(3). In other words, section 549.09 provides preaward interest on all awards of *compensatory damages* that are not excluded by the statute. *See Lessard v. Milwaukee Ins. Co.*, 514 N.W.2d 556, 558 (Minn. 1994). The statute does not define "noncompensatory" or "compensatory." Minn. Stat. § 549.09. We have stated that "[i]n the absence of a statute defining compensatory damages, it is clear that compensatory damages are generally synonymous with actual dam-

ages." *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 275 (Minn. 1995). And we have defined "actual damages" as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Ray v. Miller Meester Advert., Inc.*, 684 N.W.2d 404, 407 (Minn. 2004) (citing *Damages, Black's Law Dictionary* (7th ed. 1999)). Therefore, even the definitions of "compensatory damages" and "actual damages" do not indicate that section 549.09 can be reasonably interpreted to condition the recovery of preaward interest on a finding of wrongdoing.

■ Accordingly, we hold that Minn. Stat. § 549.09, subd. 1(b), unambiguously provides for preaward interest on all awards of pecuniary damages that are not specifically excluded by the statute, and does not restrict the recovery of preaward interest to cases or matters involving wrongdoing or a breach of contract. Because we conclude that the statutory language is unambiguous, we do not explore the spirit or purpose of the statute. *See Caldas*, 820 N.W.2d at 836.

II.

■ Having decided that Minn. Stat. § 549.09 provides for preaward interest on insurance appraisal awards regardless of the existence of wrongdoing, we next address whether the loss payment provision in Cincinnati's insurance policy precludes Poehler from recovering preaward interest on the appraisal award.

■ The prejudgment interest statute states that the date on which preaward interest begins to accrue is determined according to the schedule contained in the statute "[e]xcept as otherwise provided by contract or allowed by law." Minn. Stat. § 549.09, subd. 1(b). Cincinnati argues that the loss payment provision in its insurance

policy precludes preaward interest on Poehler's appraisal award because the provision governs when any and all payments for loss are due, and it states that a loss is not payable until 5 days after the filing of an appraisal award. In response, Poehler argues that the loss payment provision is silent on preaward interest and controls only the payment of a covered loss. Poehler contends that the insurance policy's silence on preaward interest should not be interpreted as an exclusion of preaward interest, given established Minnesota precedent requiring strict construction of insurance policies against the insurer. We hold that, absent contractual language explicitly precluding preaward interest, an insured may recover preaward interest on an appraisal award for a fire insurance loss, notwithstanding a contractual loss payment provision stating that the loss is payable after the filing of an appraisal award.

As required by Minn. Stat. § 65A.01, Cincinnati included in its insurance policy a loss payment provision, which states,

**10. Loss Payment**

. . .

*Loss is payable within 5 working days*:

a. From the receipt of the agreement by "us" or, if later, from the date of "your" performance of any conditions set by such agreement; or

b. After there is an entry of a final judgment; or

c. *After there is a filing of an appraisal award with "us"*.

(Emphasis added.)

We have never addressed whether an insurance policy provision governing when payments for loss are due precludes the insured from recovering preaward interest. But two recent cases in the Minnesota federal district court have dealt with this question and reached opposite conclusions.

In *Housing & Redevelopment Authority of Redwood Falls v. Housing Authority Property Insurance* ("*Redwood Falls*"), No. 14-CV-4741 (PAM/HB), 2015 WL 4255858 (D. Minn. July 14, 2015), *appeal docketed*, No. 15-3499 (8th Cir. Nov. 3, 2015), the federal district court examined a commercial-property insurance policy between a municipal housing authority and a property insurance company. The issue was almost identical to the issue here. The insurance policy in *Redwood Falls* covered fire losses and contained a loss payment provision stating that the loss was payable 30 days after the filing of the appraisal award. *Id.* at *1. After the insurer paid the appraisal award, the insured sued, seeking, among other things, recovery of preaward interest under Minn. Stat. § 549.09. *Redwood Falls*, 2015 WL 4255858, at *1.

*Redwood Falls* held that the insured was not entitled to preaward interest on the appraisal award because the insured was "not entitled to interest on the award before [the insurer] was obligated to make the payment." *Id.* at 3. In reaching this conclusion, the court reasoned that the insurance policy implicitly addressed when any preaward interest would start accruing based on when the insurer was contractually obligated to pay the loss. *Id.* The court stated that section 549.09 was intended to compensate the plaintiff for the loss of use of his money, and the statute assumed that "the plaintiff previously had a right to the money and the defendant wrongfully withheld the money." *Redwood Falls*, 2015 WL 4255858, at *4. According to the court, that assumption did not apply to the facts in *Redwood Falls* because the insured was not entitled to any payment until after the appraisal award was filed. *Id.* The court also noted that the insured's public-policy argument was not "compelling enough to override the clear statutory and contract language," and "denying pre-

award interest here respects the parties' contractual expectations." *Id.*

On the other hand, in a Report and Recommendation of United States Magistrate Judge, *Eden Homeowners Ass'n, Inc. v. American Family Mutual Insurance Co.* ("*Eden*"), No. 15-CV-3527 (RHK/HB) (D. Minn. Dec. 22, 2015), a U.S. Magistrate Judge reached the opposite conclusion on similar facts, and her conclusion was adopted by the federal district court, Order Adopting Report and Recommendation, *Eden*, No. 15-CV-3527 (RHK/HB) (D. Minn. Jan. 11, 2016). In this instance, the insurance policy was between a townhome association and its property insurer. Report and Recommendation, No. 15-CV-3527 at 2. The dispute arose after a hail storm damaged the siding on some of the townhomes. *Id.* The insurance policy required the insurer to pay a covered loss within 5 business days after (1) receiving the proof of loss and (2) an appraisal award has been made. *Id.* As of the date the case was removed to the federal court, the insurer had not paid any of the appraisal award. *Id.* at 5.

The court awarded preaward interest starting from the date on which the insured provided written notice of its claim to the insurer. *Id.* at 16. According to the court, the insurer erred in "presum[ing] that the date on which preaward interest began to accrue and the date on which it was obligated to pay a covered loss must be the same." *Id.* at 15. The court reasoned that a loss payment provision "governs only when [the insurer] must pay the amount of a covered loss; it does not speak to when interest begins to accrue on that amount or when such interest must be paid." *Id.* In addition, "the insurance policy is silent as to when interest begins to accrue," and "[t]o find that the loss payment provision establishes the interest accrual date is inconsistent with the basic

principles of contract law." *Id.* The court concluded by stating:

> The parties here were free to contract regarding when interest would begin to accrue on an unpaid covered loss, but they did not. Thus, § 549.09's conditional phrase "except as otherwise provided by contract" was never triggered, and § 549.09 alone governs the date on which interest began to accrue.
>
> Moreover, [the insurer]'s position that *preaward* interest did not start to accrue until five days *after* the date of the appraisal award is nonsensical. By definition, *preaward* interest begins to accrue *before* an award is issued.

*Id.* (footnote omitted).

Neither decision is binding on us, but we are persuaded by the reasoning in *Eden.* The loss payment provision in Cincinnati's insurance policy governs only when a covered loss is payable; it does not speak to when interest begins to accrue, which can be months or even years before the payment is due. And the policy does not explicitly prohibit preaward interest on appraisal awards. According to the statute, Cincinnati was free to contract with Poehler on the accrual of interest, but it did not. Accordingly, the conditional phrase in Minn. Stat. § 549.09, "[e]xcept as otherwise provided by contract," was never triggered and Cincinnati's policy does not preclude Poehler from recovering preaward interest.

### III.

█ Cincinnati also argues that Poehler is precluded from recovering preaward interest on his appraisal award by the loss payment provision in Minn. Stat. § 65A.01, which contains Minnesota's standard fire insurance policy. According to Cincinnati, section 65A.01 governs the situation here, and the "[e]xcept as otherwise . . . allowed by law" language in Minn. Stat. § 549.09,

subd. 1(b), subordinates the prejudgment interest statute to the mandatory terms set forth in section 65A.01. Cincinnati contends that the loss payment provision mandated by section 65A.01 precludes Poehler from recovering preaward interest on the appraisal award because section 65A.01 states that an insurer does not owe any interest until the loss is payable, which, according to the statute, is 60 days after the filing of the appraisal award, Minn. Stat. § 65A.01, subd. 3.

In response, Poehler maintains that section 65A.01's loss payment provision is not part of Cincinnati's insurance policy and does not apply here, because in contracting with Poehler, Cincinnati replaced the statutory provision with a "broader, less restrictive, and more 'homeowner friendly'" provision as permitted by the statute. Poehler also contends that, even if we decide that the statutory loss payment provision applies, it does not preclude preaward interest on the appraisal award; it merely caps Cincinnati's maximum liability exposure. We conclude that the loss payment provision in section 65A.01 does not apply here, and therefore we need not address the effect of section 65A.01's loss payment provision on preaward interest for appraisal awards.

Minnesota Statutes § 65A.01 requires that certain terms and conditions be included in fire insurance policies in Minnesota. According to the statute, a fire insurance policy must provide the specified coverage and conform to all provisions, stipulations, and conditions in the statute, "except as provided in [other sections of the law] and other statutes containing specific requirements that are inconsistent with the form of this policy." Minn. Stat. § 65A.01, subd. 1. Section 65A.01 also states, however, that an insurance policy providing coverage against fire may be issued without incorporating the exact language of the statute, provided:

> Such policy or contract shall, with respect to the peril of fire, afford the insured *all the rights and benefits of the Minnesota standard fire insurance policy and such additional benefits* as the policy provides; ... such policy or contract is complete as to its terms of coverage; and, the commissioner is satisfied that such policy or contract complies with the provisions hereof."

*Id.* at subd. 1 (emphasis added). And with regard to loss payment, section 65A.01 provides the following standard clause:

> The amount of loss for which this company may be liable shall be *payable* 60 days after proof of loss, as herein provided, is received by this company and ascertainment of the loss is made either by agreement between the insured and this company expressed in writing *or by the filing with this company of an award as herein provided.* It is moreover understood that there can be no abandonment of the property insured to the company, and that the company will not in any case be liable for more than the sum insured, *with interest thereon from the time when the loss shall become payable,* as above provided.

*Id.* at subd. 3 (emphasis added).

As we note in Part II of this opinion, the loss payment provision in Cincinnati's insurance policy does not contain the exact language provided in Minn. Stat. § 65A.01, subd. 3. Among other things, Cincinnati's loss payment provision provides a shorter payment schedule—5 days as opposed to 60 days—and does not contain the statutory language, "with interest thereon from the time when the loss shall become payable," *id.*

 We have stated that "[u]se of the statutory [fire insurance] form is mandato-

ry, and its provisions may not be omitted, changed, or waived." *Watson v. United Servs. Auto. Ass'n,* 566 N.W.2d 683, 690 (Minn. 1997). But insurance companies may include "additional or different terms into their policies that offer more coverage than the statutory minimum." *Id.* We will therefore uphold a provision in a fire insurance policy "only if it affords the insured all the rights and benefits of the Minnesota standard fire insurance policy or offers additional benefits which provide more coverage to the insured than the statutory minimum." *Id.* at 691 (citing *Krueger v. State Farm Fire & Cas. Co.,* 510 N.W.2d 204, 209 (Minn.App. 1993), *rev. denied* (Minn. Oct. 27, 1994)).

In *Krueger,* the court of appeals held that the district court had erred in directing a verdict in favor of the insurance company based on a provision in Minn. Stat. § 65A.01. 510 N.W.2d at 208-09. According to the court of appeals, the district court should not have "us[ed] the statute to determine the extent of Krueger's coverage" when the insurance company had provided a policy—in force at the time of the loss—that contained the minimum coverage required by the statute. *Id.* at 209. Reversing and remanding to the district court, the court of appeals held that "it was error to direct a verdict without considering whether the [insurance] policy afforded greater coverage than the minimum coverage required by the standard policy." *Id.* The court of appeals stated that "[b]y using the standard policy against the insured to impose a vacancy clause not found in the policy, the trial court used the statute as a sword for the insurer, rather than a shield for the insured." *Id.*

We agree with *Krueger* that section 65A.01 should not be used "as a sword for the insurer," and that the statute is not applicable when the parties have agreed to an insurance policy that affords the insured the minimum coverage required by the statute. Here, Cincinnati's insurance policy afforded Poehler the basic rights and benefits mandated by the law. *See* Minn. Stat. § 65A.01. To the extent that the provision in Cincinnati's policy provided a shorter payment schedule than the statutory provision and omitted the "interest" language in section 65A.01, the policy provision offered greater benefits and broader coverage to the insured. Nothing required Cincinnati to provide a shorter payment schedule; it had the opportunity to include the statutory interest language in its policy, but did not do so. Thus, we conclude that the loss payment provision in Cincinnati's policy governs over the loss payment provision set forth in Minn. Stat. § 65A.01, and we should not look to the statute to determine the extent of Poehler's coverage. Because the standard fire insurance policy is not applicable here, Poehler is not precluded from recovering preaward interest on the appraisal award.[4]

---

4. Cincinnati also contends that "[i]f 'loss of use of money' is the basis for an award of [preaward] interest in this case, it must be recognized that Poehler did not have a 'loss of use' of more than $100,000 of the ultimate appraisal award." Accordingly, Cincinnati maintains that the district court erred in awarding interest on the full amount of the appraisal award, $263,144, without deducting the $105,394 Cincinnati had already paid to Poehler by December 2, 2013, when Poehler demanded an appraisal. Poehler does not re-

spond to this argument in his reply brief. We acknowledge that it is anomalous for the district court to have awarded preaward interest on the full amount of the appraisal award, but we need not address this issue because it is not properly before us on appeal.

Cincinnati did not object to Poehler's proposed calculation of preaward interest based on the full amount of the appraisal award in the district court. Cincinnati raised this calculation issue before the court of appeals, but the court of appeals ultimately did not need to

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed.

Dissenting, Anderson, Stras, JJ.

## DISSENT

ANDERSON, Justice (dissenting).

James Poehler suffered a serious loss from a fire that occurred at his home. His insurance carrier, Cincinnati Insurance Company, promptly paid him to compensate him for his loss. A dispute developed over the total amount of Poehler's loss; the dispute was ultimately resolved by an award made in an appraisal process governed by statute and contract. Cincinnati paid the amount awarded to Poehler through the appraisal process.

This is where matters stood for four months. Then, Poehler moved the district court to confirm the already-paid appraisal award and to grant preaward interest in the approximate amount of $18,000. The district court confirmed the appraisal award but declined to enter judgment because the award had already been paid. The district court also granted preaward interest, calculated from the date that Poehler demanded the appraisal. The court of appeals reversed on the preaward interest issue. Because I agree with the court of appeals that preaward interest is not permitted under these circumstances, I would affirm.

More specifically, I conclude that the court has interpreted the governing statute, Minn. Stat. § 549.09, subd. 1(b) (2016), in a way that is inconsistent with its plain and unambiguous language. Section 549.09, subdivision 1(b) simply does not contemplate an appraisal award as an event that triggers the accrual of preaward interest. Accordingly, the question of whether an insured is entitled to interest on an appraisal award is governed instead by either: one, the language of the insurance policy, or two, Minnesota's standard fire insurance policy, Minn. Stat. § 65A.01 (2016).

In addition, even if there were some theory to get around the plain language of the statute and conclude that appraisal awards are generally contemplated by the statute, the language of section 549.09, subdivision 1(b) expressly provides that the recovery of preaward interest is permitted "*[e]xcept* as otherwise provided by contract" (emphasis added), such as a loss payment provision in an insurance contract, "or allowed by law," such as Minnesota's standard fire insurance policy set forth in Minn. Stat. § 65A.01, subd. 3. Here, the loss payment provision in the insurance contract between Poehler and Cincinnati bars Poehler's recovery of preaward interest. For these reasons, I respectfully dissent.

### I.

I turn first to the language of Minn. Stat. § 549.09, subd. 1(b). "We review questions of statutory interpretation de

address it. Before us, Cincinnati did not raise this issue in its opposition to Poehler's petition for review or its request for conditional review. When asked at oral argument whether Cincinnati contended that the district court erred in *calculating* the preaward interest, Cincinnati responded in the negative. We conclude that Cincinnati did not preserve this issue on appeal and thus we take no position

on the merits of the argument. *See e.g., In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005) (declining to consider the merits of an issue that the state did not raise in its petition for review, noting that the respondent might have argued its position on the merits more extensively had the issue been raised in the state's petition and fully developed in the state's brief).

novo." *Sumner v. Jim Lupient Infiniti*, 865 N.W.2d 706, 708 (Minn. 2015) (citing *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010)). We "interpret statutes 'as a whole,' and 'the words and sentences therein are to be understood ... in the light of their context.'" *In re Dakota Cty.*, 866 N.W.2d 905, 909 (Minn. 2015) (quoting *Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 527 (Minn. 2012)). We give the words of a statute their plain and ordinary meaning. *Meeker v. IDS Prop. Cas. Ins. Co.*, 862 N.W.2d 43, 46 (Minn. 2015). We may read multiple parts of a statute together when determining whether a statute is ambiguous. *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013) (citing *Martin v. Dicklich*, 823 N.W.2d 336, 344 (Minn. 2012)).

The court concludes that "[s]ection 549.09 plainly and unambiguously provides preaward interest on 'pecuniary damages'—including those awarded in insurance appraisals—that are not otherwise

excluded by the statute." This broad statement suggests that the mere mention of the phrase "pecuniary damages" is sufficient to bring appraisal awards within the coverage of the statute. That is incorrect because the parties' appraisal proceeding does not trigger a right to preaward interest.[1] Minnesota Statutes § 549.09, subdivision 1(b) sets out a specific list of predicate events—one of which must occur—before preaward interest accrues on pecuniary damages.[2] These events are one, the "commencement of [an] action," two, "a demand for arbitration," or three, "the time of a written notice of claim." When one of these events occurs, preaward interest on pecuniary damages is computed from the time the event occurred, subject to additional restrictions provided by the statute.[3] *Id.* If one of these events does not occur, then subdivision 1(b) of the statute simply does not apply.

It is undisputed that Poehler did not

1. I acknowledge that the statute provides for preaward interest only on "pecuniary damages." Minn. Stat. § 549.09, subd. 1(b). Because I conclude that the parties' appraisal proceeding did not trigger a right to preaward interest, I would conclude that it is unnecessary to define the scope of the phrase "pecuniary damages." I note, however, that the decisions the court relies on to illustrate the plain and ordinary meaning of "damages" involved a formal judicial proceeding or binding arbitration, neither of which occurred here. *See Ray v. Miller Meester Advert., Inc.*, 684 N.W.2d 404 (Minn. 2004) (considering whether a jury's verdict awarding front pay could be doubled under Minn. Stat. § 363.071, subd. 2 (2002)); *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271 (Minn. 1995) (considering whether actual damages awarded following a court trial on claims of age and disability discrimination could be doubled under Minn. Stat. § 363.071, subd. 2 (1992)); *Lessard v. Milwaukee Ins. Co.*, 514 N.W.2d 556 (Minn. 1994) (considering whether an insurer is liable for preaward interest on an arbitration award).

2. The court asserts, incorrectly, that this "triggering-event issue" is not properly before the court. But, in his petition for review, Poehler specifically requested that the court answer a "question of statewide significance: Under what circumstances does Minnesota's preaward interest statute, Minn. Stat. § 549.09, apply to insurance appraisal awards?" We granted review without modifying this question. To answer this question, the court must interpret section 549.09, which contains a list of predicate, or triggering, events. Accordingly, answering the question on which we granted review requires us to determine whether an insurance appraisal award is an event that triggers the accrual of preaward interest.

3. The court contends that my interpretation ignores the exceptions to the availability of preaward interest listed in subdivision 1(b)(1)-(5). To the contrary, if one of the three triggering events occurs, *then* a court must determine whether the type of award, verdict, or judgment is excluded by subdivision 1(b)(1)-(5). Minn. Stat. § 549.09, subd. 1(b).

demand arbitration.[4] Nor did his demand for an appraisal commence an "action." *See* Minn. Stat. § 645.45(2) (2016) (defining "action" as "any proceeding in any court of this state"); *see also Lucas v. Am. Family Mut. Ins. Co.*, 403 N.W.2d 646, 650 (Minn. 1987) ("[W]e conclude that 'action' in section 549.09 refers only to a judicial proceeding."). Notably, the district court found that Poehler's notice to his insurance company about the fire, in October 2013, did not "constitute[ ] a 'written notice of claim' sufficient to trigger pre-award interest" under the statute. Thus, in the absence of a "written notice of claim," the district court relied on "the date Poehler demanded an appraisal."

But, critically, there is no mention of an "appraisal" in the statute's list of triggering events for preaward interest. The statute states that arbitration triggers preaward interest based on a specific event: the demand for arbitration. By contrast, the statute does not even mention appraisals, let alone distinguish between the demand for an appraisal and the appraisal award as the trigger for preaward interest. There are just too many details missing to

read the statute as the majority does and the district court did.

Moreover, the record lacks any details about Poehler's demand for an appraisal, so we cannot conclude that it was "written" or a "notice of claim."[5] The only thing we know, other than the date, is that Poehler requested an appraisal and Cincinnati agreed. By upholding Poehler's request for preaward interest on this basis, the court has essentially made irrelevant the statutory requirement for a "written" notice of a "claim," transforming that requirement instead into a request for an appraisal of any type, written or oral. *Cf.* Minn. Stat. § 645.16 (2016) ("Every law shall be construed, if possible, to give effect to all its provisions.").

By ignoring the mandatory triggers for preaward interest, the district court and now this court violate the interpretive canon on *expressio unius est exclusio alterius*, which means "the expression of one thing is the exclusion of another." *Finn v. Alliance Bank*, 860 N.W.2d 638, 647 (Minn. 2015) (quoting *In re Welfare of J.B.*, 782 N.W.2d 535, 543 (Minn. 2010)); *see also* Minn. Stat. § 645.19 (2016) ("Provisos shall be construed to limit rather than to extend

---

4. Often, and unfortunately with resulting confusion, the terms "appraisal" and "arbitration" are used interchangeably. *See* 15 Steven Plitt, et al., Couch on Insurance 3d § 209:8 (3d ed. 2005). An appraisal is an informal and limited non-judicial proceeding. *Id.* "Arbitration is a more far-reaching proceeding, by which the parties agree to have a neutral person or persons resolve a disputed matter." *Id.* at § 209:4. Arbitrators "act quasi-judicially and may receive the evidence or views of a party to the dispute only in the presence, or on notice to, the other side, and may adjudge the matters to be decided only on what is presented to them in the course of an adversary proceeding." 4 Am. Jur. 2d *Alternative Dispute Resolution* § 3 (2007). Given these distinctions between the limited appraisal process and the more formal, quasi-judicial arbitration, "the statutes, rules and procedures applicable to arbitration *do not always*

apply." 15 Couch on Insurance § 209:8 (emphasis added); *see also id.* at § 209:9 ("[P]rinciples governing *arbitration and award* do not necessarily extend to appraisals."). Further, "an appraisal typically does not resolve the entire controversy between the parties to the insurance contract, [therefore] a judge is without authority to enter judgment on the appraiser's award without the consent of the parties." *Id.* at § 209.10.

5. The court's assertion that the district court could create a triggering event, i.e., "Poehler's demand for appraisal," conflicts with the plain language of the statute. *See supra* note 2. As discussed above, section 549.09, subdivision 1(b) lists three triggering events, and a demand for appraisal clearly is not one of them.

the operation of the clauses to which they refer. Exceptions expressed in a law shall be construed to exclude all others."). In short, the word "appraisal" is never mentioned in section 549.09. Insurance appraisal awards under a fire insurance policy are governed in exacting detail by statute.[6] Minn. Stat. § 65A.01; *see also Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012) ("Insurance companies operating within Minnesota are subject to a detailed regulatory scheme created by the legislature."). Given this extensive statutory framework, we can surely assume that the Legislature was well aware of the existence of appraisals and simply decided not to tie the accrual of preaward interest to that event. In sum, the plain and unambiguous language of section 549.09, subdivision 1(b) says nothing about a demand for appraisal—or anything relating to appraisals—in the list of events that trigger the computation of preaward interest. In the face of this legislative silence, we cannot expand the scope of the statute through judicial interpretation.

Accordingly, Poehler's claim fails on this ground alone, and I would therefore affirm the decision of the court of appeals without proceeding any further. But the court decides otherwise and moves on to analyze Poehler's specific contract with Cincinnati. Because the court's analysis of the insurance policy between Poehler and Cincinnati is also flawed, I consider this issue as well.

## II.

Preaward interest is available on pecuniary damages for certain awards, verdicts, and judgments once a triggering event has occurred. Minn. Stat. § 549.09, subd. 1(b). But, even when a triggering event occurs, preaward interest still may be unavailable. Specifically, preaward interest is available "[e]xcept as otherwise provided by contract or allowed by law." *Id.*

Poehler and the court fail to recognize that even if we assume that appraisal awards lead to a triggering event under section 549.09, we must first determine whether a contract either restricts or excludes the recovery of preaward interest before deciding whether a party or an individual is entitled to preaward interest. Here, the contract excludes the recovery of preaward interest.

The availability of preaward interest is dependent on the terms of the insurance policy itself, which by statute can incorporate additional or different terms so long as the terms do not fall below the floor set by Minnesota's standard fire insurance policy. Minn. Stat. § 65A.01, subd. 3. The insurance policy in this case contains just such a term, making losses payable by Cincinnati beginning only 5 days after an appraisal award.

---

**6.** Minnesota's standard fire insurance policy statute provides that when the insured and insurer cannot agree on the actual cash value or amount of loss, then either may submit a written demand for appraisal. Minn. Stat. § 65A.01, subd. 3. Upon written demand, each must select a "competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of [the written] demand." *Id.* If either fails to select an appraiser within the timeframe provided, then an appraiser may be appointed by a judge. *Id.* The appraisers must then select an umpire, and if they fail to do so, an umpire may be appointed by a judge. *Id.* After an umpire is selected or appointed, the appraisers must then "appraise the loss, stating separately actual value and loss to each item." *Id.* If they fail to agree, they must submit their differences to the umpire. *Id.* When filed with the company, a written itemized award by any two appraisers determines the amount of actual loss and value. *Id.* The insured and the company each pay the expenses of the appraiser they selected, and the umpire is paid by each side equally. *Id.*

We interpret the language of insurance policies de novo, *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 886-87 (Minn. 1978), and any ambiguities are resolved in favor of the policyholder, *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). Cincinnati's loss payment provision in the insurance policy provides that a loss is payable within 5—rather than 60—days after an appraisal award is filed with Cincinnati, thus granting Poehler a benefit more generous than what is guaranteed by the standard fire insurance policy statute. *See* Minn. Stat. § 65A.01, subd. 3. The loss payment provision, however, is silent as to when interest begins to accrue. Because the policy is silent on this issue, we must determine when interest may begin to accrue under the policy.

"[T]he extent of liability of an insurer is governed by the contract" entered into with the insured, *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960), and a "statutorily required provision in an insurance policy will not necessarily be construed against the insurer," *Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000) (citing *Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W.2d 807, 811 (Minn. 1977) ("The usual rule of construction most favorable to the insured does not apply to a [policy] provision required by statute.")).

The court contends that we "have never addressed whether an insurance policy provision governing when payments for loss are due precludes the insured from recovering preaward interest." This is not entirely correct. We have determined that when a policy provides for arbitration or an appraisal, interest does not begin to accrue until an award is made because until that time, the insurer has not defaulted on a payment obligation. *Schrepfer v. Rockford Ins. Co.*, 77 Minn. 291, 295-96, 79 N.W. 1005, 1007 (1899) (determining that

"[i]nterest by way of damages is allowed only on account of some default," and "[u]ntil then the amount which it should pay could not be ascertained"); *see also* 12 Steven Plitt et al., Couch on Insurance § 178:36 (3d ed. 2005) ("Where a fire insurance policy provides for an appraisal or arbitration in case the parties should disagree as to the amount of loss payable thereunder, and the insurer reasonably avails itself of this right, *interest on the principal payable under the policy does not run until the appraisal or arbitration award has been made*." (emphasis added) (citing *Schrepfer*, 77 Minn. at 295, 79 N.W. at 1006)). In fact, we said in *Schrepfer* that an insurer is not "guilty of any default in not paying" the insured on a loss until an award was made that determined the amount of the loss. 77 Minn. at 295, 79 N.W. at 1007.

The logic of this reasoning is obvious. Preaward interest compensates for loss of the use of money occasioned by the defendant's conduct. *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn. 1988). Poehler was not deprived of the use of any money because under the terms of his insurance policy, Cincinnati was not liable for the losses Poehler claimed until an appraisal award was filed. *See Bobich*, 258 Minn. at 294, 104 N.W.2d at 24 (stating that an insurer's liability "is governed by the contract they enter into"); *see also Hous. & Redevelopment Auth. of Redwood Falls v. Hous. Auth. Prop. Ins.*, No. 14-CV-4741 (PAM/HB), 2015 WL 4255858 at *4 (D. Minn. July 14, 2015) (stating that an insurer that demanded an appraisal and then paid the appraisal award "complied with the insurance policy," thereby eliminating the right to preaward interest because the insured cannot claim "that it was entitled to payment of the loss sooner than when the policy said it would receive payment"). In contrast, an insured would be entitled to preaward interest if an insurer failed to

comply with the agreed-to terms of the parties' contract by failing to remit a timely payment under the contract.[7] "After a valid appraisal or arbitration award has been made, interest is recoverable from the date of such appraisal or arbitration or *after the expiration of a specified number of days if the policy involved so provides*." 12 Couch on Insurance § 178.36 (emphasis added).

Other states, in addition to Minnesota, recognize that an insured is not entitled to interest from the date of loss; rather, interest is calculated once the loss becomes payable.[8]

> [W]here a policy insuring against fire loss provides, either affirmatively, that the loss shall be payable a certain number of days (ordinarily 60) after the insured has furnished proofs of loss, or negatively; that the loss shall not be payable until such a number of days have elapsed, the principal payable under the policy will not bear interest for

any time before the period so provided has expired, *but will bear interest from that time.*

Kristine Cordier Karnezis, Annotation, *Insured's Right to Recover from Insurer Prejudgment Interest on Amount of Fire Loss*, 5 A.L.R. 4th 126 (1981) (emphasis added); *see also* 12 Couch on Insurance § 178.38 (same).

In such states, two factors are considered when determining the point at which interest begins accruing on an unpaid property insurance claim. First, "[a]t which point did the claim become sufficiently certain to invoke the rule that interest should be paid on claims that are liquidated or susceptible to computation?" 12 Couch on Insurance § 178.34. Second, "[a]t which point is the insurer required—by the policy, by an applicable statute, or by basic equity if *neither* policy nor statute address the point—to make payment of *claims*?"[9] *Id.* (emphasis added). "[I]nter-

---

7. The decision in *Eden Homeowners Ass'n, Inc. v. American Family Mutual Insurance Co.*, No. 15-CV-3527 (RHK/HB) (D. Minn. Dec. 22, 2015), which the court concludes is persuasive, is distinguishable for at least two reasons. First, the insurer "had not paid any of the appraisal award" by the time the case was before the magistrate judge. *Id.* at 5. Thus, the insurer in that case could not, in contrast to Cincinnati, claim to have complied with its contractual obligations. Second, the magistrate judge concluded that an insured is "entitled to use of [the] money" when the insured files a notice of claim under section 549.09. *Id.* at 13-14 (quoting *Nelson v. Ill. Farmers Ins. Co.*, 567 N.W.2d 538, 543 (Minn. App. 1997)). Here, in stark contrast, the district court found no evidence of a notice of claim made to Cincinnati, and the parties have not pointed us to anything in the record that represents the notice of claim required by Minn. Stat. § 549.09, subd. 1(b).

8. Minnesota's federal district courts also have followed this approach, relying on Minnesota law. *See Bellanca Aircraft Corp. v. Fireman's Fund Ins. Co.*, 353 F.Supp. 929, 931 (D.

Minn. 1973) ("The law is that interest accrues at the time that damages become liquidated," and damages here became liquidated "60 days after plaintiff submitted its proof of loss."); *Craigie v. Firemen's Ins. Co.*, 191 F.Supp. 710, 715-16 (D. Minn. 1961) (recognizing that under Minnesota law, "interest would not begin to run under the policy provisions until the award was filed with the insurance company").

9. Plitt observes that a "practitioner should first review the policy to determine whether there is any explicit or implicit policy provision that may apply. Absent a policy provision, the practitioner should review any applicable statute or common law rules to determine the commencement date." 12 Couch on Insurance § 178.34. Plitt further notes that "[a]s a general proposition, interest upon a loss payable under an insurance policy *is not recoverable before,* but is recoverable from *the time when, the payment of the principal*—the claim by the insured—*is due under the terms of the policy.*" *Id.* (emphasis added).

est ordinarily commences on the later of the two above dates." *Id.*

Under the first factor here, Poehler's claim became sufficiently certain after the appraisers issued the award on June 23, 2014, determining that Poehler's loss exceeded the payments made by Cincinnati in the amount of $88,480. Indeed, the district court determined that, before this date, Poehler's communications with Cincinnati in October 2013 did not provide sufficient information to constitute a written notice of claim. There is no other evidence in the record to suggest that Poehler's claimed loss was sufficiently certain before the date of the appraisal award. Under the second factor, Cincinnati is required by its policy to make payment on claims 5 working days after the appraisal award is filed with Cincinnati. Thus, the loss became payable 5 working days after the appraisal award was filed, and Cincinnati became legally obligated to pay interest beginning on that date.[10]

Accordingly, Cincinnati is liable for interest to Poehler from the time when the loss became payable under the contract, 5 working days after the appraisal award was filed with Cincinnati.

For these reasons, I respectfully dissent.

STRAS, Justice (dissenting).

I join Part II of Justice Anderson's dissent.

---

10. The court also concludes that it cannot address the "anomalous" result of awarding Poehler preaward interest on over $100,000 that Cincinnati paid to Poehler before the appraisal award was made because Cincinnati failed to raise this objection below or before us. I cannot agree. Cincinnati has argued throughout these proceedings that Poehler is not entitled to payment of preaward interest for money that was timely paid to him. Therefore, Cincinnati's argument before both the court of appeals and here that Poehler is not entitled to preaward interest places the determination of the proper calculation for preaward interest properly before our court.